[No. 5228–II.   Division Two.   March 12, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. ARLEN A. OLSON, ET AL, *Appellants.*

*Paul Sinnitt* and *Elvin J. Vandeberg,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Robert C. Hargreaves, Assistant,* for respondent.

REED, C.J.—The condemnees, Arlen and Eugene Olson, appeal from a judgment entered pursuant to RCW 8.25.070 denying them an award of attorney fees incurred in a condemnation action initiated by the State of Washington.

In 1979, the State commenced condemnation proceedings to acquire a large sandspit in Clallam Bay for a state park. An order of adjudication of public use and necessity was entered January 12, 1979 and a trial to determine the value of the property was set for August of that same year. On July 26, 1979, the State filed a statement of offer for the condemnees' property in the amount of $90,000. This offer was rejected by the condemnees who believed the property had a value of at least $110,000.

The valuation trial was subsequently delayed until September 1980 through no fault of the parties. Upon being informed of this delay, the State submitted a motion asking the trial court to establish the initial trial date as the date of valuation for the condemned property. This motion was

resisted by the condemnees who argued that the valuation date should be the date of the actual trial. The trial court agreed with the condemnees and denied the motion.

In January 1980, the value of the condemned property was drastically reduced as a result of natural flooding. The State reappraised the property and submitted a new offer in the amount of $35,000. This offer was also rejected and the matter proceeded to trial, where the jury ultimately awarded the condemnees a total sum of $57,000.

Subsequent to trial the condemnees petitioned for an award of attorney and appraiser fees pursuant to RCW 8.25.070. This statute provides that such fees must be granted if (1) the condemnor fails to make any written offer in settlement at least 30 days prior to trial, RCW 8.25.070(1)(a); or (2) the amount of compensation ultimately awarded by the trier of fact is 10 percent greater than the highest written offer in settlement submitted at least 30 days before trial. RCW 8.25.070(1)(b). The trial court literally construed the language of the statute and concluded that the highest written offer in settlement was the State's initial offer of $90,000. Consequently, the request for fees was denied on the ground that the jury award of $57,000 did not exceed the highest offer by 10 percent.

On appeal the condemnees maintain that the 10 percent computation set forth in RCW 8.25.070(1)(b) should have been based on the State's final offer of $35,000. They argue that because of the drastic changes in the property occasioned by the flooding, this matter should be considered as two separate condemnation actions. Therefore, they contend that the $35,000 offer made subsequent to the flooding was the only offer for the property which was actually condemned. Utilization of the $35,000 offer as the basis for the 10 percent computation would clearly mandate an award of attorney and appraiser fees under the statute.

█ The condemnees have cited no authority in support of the proposition that the flooding created a "new" or "different" piece of property. Indeed, neither the pleadings

of the parties nor the legal description of the property[1] was amended in any manner subsequent to the flooding. Moreover, fluctuation in size is a natural attribute of a sandspit and we refuse to hold that every reduction or increase creates the necessity of a separate condemnation action.

Accordingly, the judgment denying fees must be affirmed.

■ Before concluding, we believe something should be said about legislative intent, even though condemnees expressly disclaim any interest in a judicial construction of the statute. The condemnees concede, and we agree, that the statute is clear and unambiguous and that there is no absurd or incongruous result if each word or phrase therein is accorded its usual and ordinary meaning, *Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979). This being so, the court may not resort to judicial construction in order to rectify what may appear to be an unfair and injudicious result. The principle has been stated in *In re Estate of Sherwood,* 122 Wash. 648, 211 P. 734 (1922), at pages 655–56 as follows:

> But the courts are loath to read into a statute something which the legislature has not expressly put therein. It is true, undoubtedly, that the first in importance of the rules of statutory construction is the rule which requires the courts to search out and give effect to the legislative intent, but the rule is not without its limitations. It does not mean that the courts are at liberty, in all instances, when searching for the legislative intent, to go beyond the literal wording of the statute, although the literal construction be harsh and may seem to work inequity when measured by those standards usually regarded as just and equitable. On the contrary, where the meaning of the language used is plain, and the language is in itself susceptible of a rational construction, the meaning of the statute must be found from the language of the act itself. It is only where the language is of doubtful meaning, or where an adherence to the strict letter of the statute would lead to absurd or incongruous results, or would

---

[1] It is conceded that the property description (portion of government lot) remains the same. The effect of the flooding was to reduce in size and configuration only that portion of the spit extending above water.

make one part of the statute contradictory of another part, or where it is plain from the entire context and evident purpose of the statute that the language used on a particular matter did not express the legislative intent thereon, that the courts will depart from the literal wording.

*See also Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970); *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967); *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963).

■ This court is not precluded, however, from making some observations concerning the apparent inequities inhering in a strict interpretation of the statute. Indeed, the legislature may welcome suggestions for its improvement. In that vein we perceive a legislative intent underlying RCW 8.25.070 to ensure that both parties in an eminent domain proceeding make a good faith attempt at settlement prior to trial. *Port of Seattle v. Rio,* 16 Wn. App. 718, 559 P.2d 18 (1977). The 10 percent computation embodied in RCW 8.25.070(1)(b) is designed to test the reasonableness of the parties' efforts in this respect. In situations where the value of property depreciates during the pendency of a condemnation action, RCW 8.25.070(1)(b) will not fulfill its legislative purpose if it is literally construed to require that the computation be based on the highest written offer made during the course of the entire proceedings. A comparison of the final compensation award with an offer made prior to the devaluation of the property does not accurately reflect the reasonableness of the settlement effort engaged in by the parties (the reasonableness of such an offer could only be assessed by comparing it with the predepreciated value of the condemned property). The only legitimate test of the parties' efforts toward settlement under these circumstances is a comparison of the amount awarded by the jury with the last offer in effect prior to trial. Because of these perceived inequities, we believe the statute should be amended so as to base attorney and witness fee entitlement on the highest written offer in settlement in effect 30 days before trial.

408

Judgment affirmed.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied April 28, 1982.

Review denied by Supreme Court June 30, 1982.