[No. 44956-7-I. Division One. June 5, 2000.]

THE STATE OF WASHINGTON *on the relation of the Washington State Convention and Trade Center, Respondent,* v. ROBERT J. ALLERDICE, *as Trustee, Personal Representative, and Executor,* ET AL., *Appellants.*

*Thomas J. Greenan* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*); *Gary J. Strauss* and *Robert B. Spitzer* (of *Garvey, Schubert & Barer*); *Linda ˑˑ. Youngs* (of *Hanson Baker Ludlow Drumheller, P.S.*); and *Keith A. Kemper* and *Kristen K. Waggoner* (of *Ellis, Li & McKinstry, P.L.L.C.*), for appellants.

*Christine O. Gregoire*, Attorney General, and *Robert A. Wright* and *Bryce E. Brown, Jr.*, Assistants, for respondent.

BAKER, J. — Robert J. Allerdice and other property owners challenged the State's right to take their property by eminent domain. The trial court rejected their arguments, and entered an Order Adjudicating Public Use (OAPU). The property owners appealed and refused to tender immediate use and possession to the State until after the Washington Supreme Court affirmed the OAPU. After a jury determined just compensation in amounts substantially exceeding the State's previous offers, the property owners moved for an award of attorney fees and expert witness fees pursuant to RCW 8.25.070.. The trial court denied the motion, and the property owners appeal. We reverse.

I

The State filed condemnation actions to acquire parcels in downtown Seattle required for expansion of the Washington State Convention and Trade Center. Written requests for immediate use and possession were served and filed on all of the condemnees. However, nine property owners challenged the State's right to acquire their properties by eminent domain on the grounds that the proposed development consisted of an impermissible mixture of public and private uses. The trial court ruled that the eminent

domain action was constitutional and entered an OAPU.

Six of the property owners appealed the OAPU, and the Washington Supreme Court accepted direct review. The court affirmed the OAPU and remanded the case for trial to determine just compensation.[1] Within 15 days after the Supreme Court's decision, the property owners tendered immediate use and possession of the property to the State, and the State took possession pursuant to stipulated orders.

The property owners rejected the State's pretrial settlement offers, and a consolidated jury trial was held on the question of just compensation. The jury verdicts in each case exceeded the State's highest settlement offer by more than 10 percent. The property owners then moved for attorney fees and expert witness fees pursuant to RCW 8.25.070. The trial court entered separate orders denying fees under RCW 8.25.070, but awarding statutory attorney fees under RCW 4.84.080(1)[2] and statutory evaluation costs under RCW 8.25.010.[3] The property owners now appeal.

## II

■ We review matters of statutory construction or interpretation de novo.[4]

RCW 8.25.070 defines conditions under which a condemnee may obtain an award of reasonable attorney fees and expert witness fees:

(1) Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an

---

[1] *State ex rel. Washington State Convention & Trade Ctr. v. Evans*, 136 Wn.2d 811, 966 P.2d 1252 (1998).

[2] RCW 4.84.080(1) provides for attorney fees of $125 in all actions where judgment is rendered.

[3] This must have been a typographical error in the court order. Statutory evaluation costs are payable under RCW 8.25.020, not RCW 8.25.010. The maximum award is $750.

[4] *Clauson v. Department of Labor & Indus.*, 130 Wn.2d 580, 583, 925 P.2d 624 (1996).

interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

. . . .

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

. . . .

(3) Reasonable attorney fees and reasonable expert witness fees authorized by this section shall be awarded only if the condemnee stipulates, if requested to do so in writing by the condemnor, to an order of immediate possession and use of the property being condemned within thirty days after receipt of the written request, or within fifteen days after the entry of an order adjudicating public use whichever is later and thereafter delivers possession of the property to the condemnor upon the deposit in court of a warrant sufficient to pay the amount offered as provided by law . . . .

RCW 8.04.090 addresses the circumstances under which the State may obtain immediate use and possession of the condemned property:

In case the state shall require immediate possession and use of the property sought to be condemned, and an order of necessity shall have been granted, and no review has been taken therefrom, the attorney general may stipulate with respondents in accordance with the provisions of this section and RCW 8.04.092 and 8.04.094 for an order of immediate possession and use . . . .

The property owners contend that the trial court's interpretation of RCW 8.25.070(3) forced them to make an unacceptable choice: either waive their constitutional right to challenge the State's eminent domain action, or forgo their statutory right to collect attorney and expert fees. They claim that RCW 8.25.070(3) and RCW 8.04.090 should be read in pari materia so that the phrase "entry of an order adjudicating public use" in RCW 8.25.070(3) is interpreted to mean "entry of an OAPU that is final or has been

sustained on appeal." Because they tendered immediate use and possession of their property within 15 days after the Washington Supreme Court upheld the OAPU, they claim that they are entitled to recover attorney and expert witness fees under RCW 8.25.070.

Relying on the plain meaning of RCW 8.25.070 and on *City of Everett v. Weborg*,[5] the State argues that RCW 8.25.070 unambiguously requires a property owner to stipulate to immediate use and possession within 15 days of entry of an OAPU in order to preserve the opportunity to collect fees. The State argues that RCW 8.04.090 and RCW 8.25.070 should not be read in pari materia because they cover different subject matters and have different legislative purposes, and that even if they conflict, RCW 8.25.070(3) is entitled to statutory preference as the later adopted statute. The State acknowledges that this interpretation requires the property owners to forgo their right to appeal the OAPU in order to preserve their opportunity to collect attorney and expert fees, but contends that this court should not rewrite the clear language of RCW 8.25.070(3) even if it believes that the Legislature did not intend this result.

 The issue is whether to interpret RCW 8.25.070(3) to permit property owners to preserve the opportunity to collect fees by tendering immediate use and possession of the property after entry of an OAPU that is final or has been sustained on appeal. There is no constitutional right to attorney fees, and any award of fees must be based on a statute.[6] A court interprets a statute so as to give effect to its legislative intent.[7] If the statute is unambiguous, its meaning is to be derived from the language of the statute alone. If, however, the intent of the statute is not clear from the language of the statute by itself, the court may resort to

---

[5] 39 Wn. App. 10, 691 P.2d 242 (1984).

[6] *Weborg*, 39 Wn. App. at 12.

[7] *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996).

statutory construction, including a consideration of legislative history.[8]

■ The State contends that we cannot interpret RCW 8.25.070(3) to permit the property owners to stipulate within 15 days after entry of a final OAPU because the statute is clear on its face. We disagree. Under RCW 8.04.098, an order adjudicating public use is "final as to those respondents not seeking a review to the supreme court or the court of appeals within five days after the entry thereof." An OAPU entered by the trial court is interlocutory and appealable as a matter of right. Therefore, an OAPU cannot be legally effective until the appeal is resolved, and it follows that an interlocutory OAPU can have no legal effect with respect to a property owner's right to attorney and expert witness fees. Because RCW 8.25.070(3) does not explicitly address this situation, the statute is ambiguous and susceptible to interpretation.

Further evidence that RCW 8.25.070(3) is ambiguous may be found by considering the effect of a motion for reconsideration. CR 59(b) provides that the court may hear or consider a motion for reconsideration within 30 days after entry of the judgment. An OAPU that may be reversed upon reconsideration cannot be considered final, yet the statute requires that the property owners stipulate within 15 days of entry of an OAPU in order to preserve the opportunity to collect fees. Again, it is apparent that RCW 8.25.070(3) does not clearly address this situation. Because the statute is ambiguous, we may go beyond the plain words of the statute and utilize principles of statutory interpretation in order to give meaning to its legislative intent.

■ The legislative purpose of RCW 8.25.070 is to ensure that both parties in an eminent domain proceeding make a good faith attempt at settlement before trial.[9] The statute

---

[8] *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

[9] *State v. Olson*, 31 Wn. App. 403, 407, 642 P.2d 410 (1982).

uses a carrot-and-stick approach to create incentives for both condemnor and condemnee. First, if an OAPU is not appealed and the property owners stipulate to immediate use and possession, they are entitled to reasonable attorney fees and expert witness fees if the jury verdict is at least 10 percent more than the State's highest written offer of settlement in effect 30 days before trial. The State has an incentive to make a reasonable settlement offer, because if the property owners refuse to accept a low offer and the jury award exceeds the State's offer by more than 10 percent, then the State must pay the property owners' fees. The property owners have an incentive to tender immediate use and possession when requested by the State prior to the valuation trial because they must do so in order to preserve the opportunity to collect fees. This allows the State to begin work on its project earlier than it otherwise would be able to.

If the property owners appeal the OAPU and are successful, then the State may not proceed with its project, and the property owners are entitled to reasonable fees under RCW 8.25.075. However, if the property owners' appeal is unsuccessful, then the parties are back to square one, but with a significant twist. In the State's view, because the owners chose to appeal rather than to stipulate within 15 days of the trial court's ruling, they are no longer eligible for attorney and expert fees under RCW 8.25.070. Thus, they have no incentive to stipulate to immediate use and possession prior to the valuation trial. Moreover, the State has lost its incentive to make a reasonable settlement offer, because it knows that it will not be liable for fees even if the jury verdict exceeds its highest settlement offer by more than 10 percent. In other words, should the property owners appeal the OAPU and lose, settlement prior to trial becomes less likely, and the project cannot commence until the valuation trial is complete. The legislative purpose of RCW 8.25.070(3) is thus impaired if the property owners choose to appeal the OAPU and lose. On the other hand, if RCW 8.25.070(3) is construed to permit the property owners to

retain the opportunity to collect fees by stipulating within 15 days after entry of a *final* OAPU, then all of the original incentives remain intact and the legislative purpose of the statute is preserved.

The State suggests that we reconcile this inconsistent result by assuming that the Legislature intended to force property owners to choose between their constitutional right to appeal the OAPU and their statutory right to collect fees. However, the State fails to cite any legislative history or case law in support of this interpretation. While RCW 8.25.070 is designed to exact a quid pro quo from the property owners by requiring them to tender their property to the State prior to the valuation trial in return for the opportunity to collect fees, it does not follow that the Legislature additionally intended to penalize property owners for exercising their constitutional right to appeal an OAPU. Given that the incentive process breaks down in the event that the property owners appeal the OAPU and lose, it is reasonable to assume that the Legislature did not intend this result.

█ The legislative intent of RCW 8.25.070(3) is further supported when that statute is construed in pari materia with RCW 8.04.090. The property owners correctly assert that the statutes may be read in pari materia, as they both relate to the consequences of an OAPU for both condemnor and condemnee. " 'Statutes in pari materia are those which relate to the same person or thing, or the same class of persons or things . . . .' "[10] RCW 8.04.090 recognizes that the State cannot obtain immediate possession and use of the property until an OAPU is final. This makes sense, because the State would waste time and money if the OAPU were overturned after the State had begun its project. Because RCW 8.04.090 specifies that the State may stipulate to immediate possession only when the OAPU has not been appealed, and the State's interpretation of RCW 8.25.070(3)

---

[10] *Beckman v. Wilcox*, 96 Wn. App. 355, 364, 979 P.2d 890 (1999), *review denied*, 139 Wn.2d 1017, 994 P.2d 847 (2000) (quoting *State v. Houck*, 32 Wn.2d 681, 684, 203 P.2d 693 (1949)).

could require the property owners to stipulate during the pendency of an OAPU appeal, the two statutes must be reconciled to permit stipulation after entry of a final OAPU.

The State relies heavily on *City of Everett v. Weborg* to support its contention that property owners are barred from receiving fees in this case.[11] However, we are not persuaded that *Weborg* is dispositive. In *Weborg*, the City of Everett condemned the Weborg property, Weborg refused the settlement offer, and an OAPU was entered. Weborg did not appeal the OAPU and failed to stipulate to immediate use and possession until 37 days after the OAPU was entered.[12] The trial court awarded attorney and expert fees to Weborg under RCW 8.25.070. The City appealed, arguing that Weborg was not entitled to fees because she failed to stipulate within 15 days of entry of the OAPU. Weborg countered that the City's offer to stipulate was invalid because it had failed to follow the procedural order required by RCW 8.04.090.[13] This court reversed, holding that RCW 8.04.090 did not alter the plain language of RCW 8.25.070.[14] First, we noted that RCW 8.04.090 applies only to the State, not to cities.[15] Next, the City had followed the procedural requirements of RCW 8.25.070, and therefore the offer to stipulate was valid.[16] Finally, we rejected in dicta Weborg's argument that RCW 8.04.090 impliedly extends the time limits of RCW 8.25.070 by the 30-day appeal period of the OAPU because the statute did not expressly provide for an appeal period.[17]

There are significant differences between this case and *Weborg*. The matter that is at the heart of this case—the right to retain the opportunity to collect fees after appeal of

---

[11] 39 Wn. App. 10, 691 P.2d 242 (1984).

[12] *Weborg*, 39 Wn. App. at 11-12.

[13] *Id.*, 39 Wn. App. at 13.

[14] *Id.*, 39 Wn. App. at 13.

[15] *Id.*, 39 Wn. App. at 14.

[16] *Id.*, 39 Wn. App. at 14-15.

[17] *Id.*, 39 Wn. App. at 15.

an OAPU—was not at issue in *Weborg*, because there was no appeal from the OAPU in that case. Furthermore, the *Weborg* decision largely turned on the fact that RCW 8.04.090 did not apply to condemnation actions by the City of Everett, whereas here the State, as the condemning entity, is unquestionably subject to that statute. Therefore, *Weborg's* usefulness to the State is limited to its dicta.

The State also argues that if property owners have the right to stipulate after entry of a final OAPU, they will have an incentive to appeal an OAPU for the sole purpose of delaying the valuation trial and thereby taking advantage of rising property values. However, any award of fees under 8.25.070(3) must be reasonable, and the trial court is free to reduce any award of fees, or even impose sanctions for a frivolous appeal under CR 11, if it determines that there were no reasonable grounds for appealing the OAPU. These are sufficient deterrents to frivolous appeals.

We conclude that RCW 8.25.070(3) must be interpreted to permit property owners to stipulate to an OAPU within 15 days after entry of a final OAPU. This interpretation preserves the legislative intent of the statute and furthers the public policy of providing full compensation to property owners when the State exercises its power of eminent domain. We therefore reverse the trial court and remand for a hearing to determine the amount of fees to which the property owners are entitled under RCW 8.25.070.

Lastly, the property owners moved to strike all portions of the State's brief that are without citation to the record on appeal. The contested portions of the brief refer to matters before the trial court which were not made part of the record on appeal. Although this descriptive information was not necessary to the resolution of the issue before the court, we grant the property owners' motion to strike all references to materials that are not on the record at appeal.[18] Appellants are awarded their costs on appeal as provided for in RAP 14.3, together with reasonable attorney fees on

---

[18] *Nelson v. McGoldrick*, 127 Wn.2d 124, 141, 896 P.2d 1258 (1995).

appeal to be determined by a commissioner of this court consistent with RAP 18.1.

Reversed.

KENNEDY and ELLINGTON, JJ., concur.

Reconsideration denied July 10, 2000.