98 P.3d 795 (2004)
STATE of Washington, Petitioner,
v.
Elroy COSTICH; Elroy Costich as trustee under the Costich Living Trust, Respondents,
Spokane County, Defendant.
No. 74464-5.
Supreme Court of Washington, En Banc.
Argued June 24, 2004.
Decided October 7, 2004.
*796 James P. Emacio, County Pros Office Civil Div, Spokane, John F. Salmon, Steve Edwin Dietrich, Olympia, for Petitioner.
Robert Allan Dunn, Kevin W. Roberts, Dunn & Black PS, Spokane, for Respondents.
Susan Paula Jensen, Mark Von Wahlde, Pierce Co Pros Office Civil Div, Tacoma, for Amicus Curiae (Washington Association of Prosecuting Attorneys).
Milton G. Rowland, Spokane, Daniel Brian Heid, Auburn, for Amicus Curiae (Washington State Association of Municipal Attorneys).
SANDERS, J.
This is a condemnation action brought by the State to acquire Mr. Phillip Costich's property in north Spokane County. The Court of Appeals affirmed a trial court's award of reasonable attorney and expert witness fees to Mr. Costich based on the trial court's invalidation of the State's settlement offer because the State did not (1) itemize in the settlement offer the State's estimation of the property's fair market value and (2) leave the offer open for a 30-day period prior to trial. At issue is whether invalidation of the settlement offer was appropriate. We hold it was not. Accordingly we reverse.

FACTS
The underlying facts are, for the most part, undisputed. In September 2000 the State notified Mr. Costich[1] that it needed to acquire his property to begin highway construction *797 improvements to State Route 395 in north Spokane County. The Washington State Department of Transportation (DOT) had the property appraised and offered $134,000 as just compensation, which Mr. Costich ultimately refused, thus prompting the instant condemnation action. Following the relevant statutory procedures,[2] the State paid the amount of its offer, $134,000, into the court registry, and both parties stipulated to an order adjudicating public use and granting the State immediate possession and use of the property. Mr. Costich withdrew the funds and demanded a jury valuation trial, which the court scheduled for March 4, 2002.
The DOT had the Costich property appraised again in August 2001, this time by a different appraiser, Bruce Jolicoeur. He ultimately appraised the Costich property at $191,200. Mr. Costich received Mr. Jolicoeur's appraisal on November 29, 2001. However the State did not raise its original offer until January 30, 2002, when it mailed an offer of settlement to Mr. Costich's attorney, which was received the following day. The letter offered "$282,500 as its all-inclusive offer in full settlement" but was to expire on February 8, 2002. Clerk's Papers (CP) at 36 (emphasis added). Mr. Costich responded the next day by requesting an itemization of the offer, claiming he was "unable to ascertain what the State is offering as Fair Market Value for Mr. Costich's property." CP at 395. The State answered by stating the offer was "the written settlement offer referred to in RCW 8.25.070." CP at 396. The parties continued to exchange correspondence over the next several days. Mr. Costich continued to reiterate his demand for an itemization, a demand the State consistently refused, maintaining its position that it did not itemize the categories specified by Mr. Costich when calculating the sum of the amount offered.
Dissatisfied with the State's refusal to break down the January 30 offer, Mr. Costich filed a motion seeking a pretrial declaratory ruling that the offer was invalid under RCW 8.25.070. He argued the offer failed to comply with the statute because (1) it did not specify the State's offer of just compensation, thereby leaving the offer inadequate for purposes of comparing it to the jury award, and (2) it did not remain open for a 30-day span. The trial court agreed on both counts and granted the motion on February 14, leaving the State's original $134,000 offer as the lone offer in effect on the date of trial.
The jury valuation trial was held, resulting in an award of $252,000 as just compensation for the taking. Despite the State's $282,500 offer on January 30, the net effect of the trial court's declaratory ruling left the $134,000 as the sole offer to compare the judgment to determine whether an additional award of reasonable attorney fees and expert witness fees was warranted. RCW 8.25.070. Because the State's offer was easily exceeded by over 10 percent, the trial court entered judgment in the amount of $365,669.20, comprised of the $118,000 difference between the $252,000 jury determination of just compensation and the $134,000 Mr. Costich had already withdrawn from the court registry,[3] $88,157.75 in reasonable attorney fees, $12,582.35 in expert witness fees, $11,714.58 in prejudgment interest, and $1,214.52 in costs.
The State appealed to Division Three of the Court of Appeals which affirmed by a divided court. State v. Costich, 117 Wash.App. 491, 72 P.3d 190 (2003), review granted, 151 Wash.2d 1009, 88 P.3d 964 (2004). In addition to holding the settlement offer was invalid because it "did not establish the State's determination of just compensation," id. at 502, 72 P.3d 190, the Court of Appeals majority "mention[ed] in passing  purely as dictum  that, as we read this statute, the *798 State is required to keep its offer in effect for a full 30 days," id. at 499, 72 P.3d 190.[4]

ANALYSIS
At the outset it is important to note we are not examining the extent of the State's eminent domain power, see Washington Constitution article I, section 16, since neither party disputes the State's condemnation of Mr. Costich's property was for public use and that the just compensation amount was properly determined by a jury. Rather this case solely concerns the issue of whether a party is entitled to an award of reasonable attorney fees and expert witness fees incurred through litigation. See Petersen v. Port of Seattle, 94 Wash.2d 479, 487, 618 P.2d 67 (1980) (constitutional right to just compensation upon public taking of private property does not include reasonable attorney fees and expert witness fees); City of Everett v. Weborg, 39 Wash.App. 10, 12, 691 P.2d 242 (1984) (same). Entitlement to such an award does not exist in Washington, which follows the American Rule, unless provided otherwise in contract, statute, or recognized equitable principles. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). Mr. Costich claims his right to reasonable attorney and expert witness fees exists in RCW 8.25.070. As such we engage in a de novo review of the purely legal question of statutory interpretation. Restaurant Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 681, 80 P.3d 598 (2003).
Our analysis of RCW 8.25.070 begins with the plain language employed by the legislature. Restaurant Dev., 150 Wash.2d at 682, 80 P.3d 598; State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Recalling our primary goal is to give effect to the legislature's intent, we derive such intent by construing the language as a whole, giving effect to every provision. J.P., 149 Wash.2d at 450, 69 P.3d 318. If the language is unambiguous, we give effect to that language and that language alone because we presume the legislature says what it means and means what it says. State v. Radan, 143 Wash.2d 323, 330, 21 P.3d 255 (2001). The plain meaning of the statute is derived not only from the statute at hand, but also "all that the Legislature has said in the ... related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002), quoted in J.P., 149 Wash.2d at 450, 69 P.3d 318.

I. Segregating just compensation offered
Under various circumstances a condemnee may recover reasonable attorney fees and expert witness fees in addition to the just compensation which is constitutionally required. E.g., RCW 8.25.070(1), .075(1). One such circumstance is when:
the judgment awarded as a result of the trial [held for purpose of fixing of the amount of compensation] exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.
RCW 8.25.070(1)(b) (emphasis added).[5] On its face RCW 8.25.070(1)(b) recognizes two factors a trial court compares to determine whether the condemnee is entitled to reasonable attorney fees and expert witness fees incurred as a result of litigating the just compensation amount: (1) "the judgment awarded as a result of the trial," and (2) "the highest written offer in settlement ... in *799 effect thirty days before the trial." When the former exceeds the latter by 10 percent or more, the court is required to award reasonable attorney fees and expert witness fees. State v. Roth, 78 Wash.2d 711, 715-16, 479 P.2d 55 (1971) (holding inter alia award of fees under RCW 8.25.070 mandatory if condemnee meets all statutory prerequisites).
Relying on State v. Swarva, 86 Wash.2d 29, 541 P.2d 982 (1975), the State contends the trial court and Court of Appeals erred by holding the $282,500 offer invalid "because that figure exceeded the State's evidence of just compensation." Supp'l Br. of Pet'r at 9. In Swarva the State offered roughly $123,000 as compensation for the condemned property, which it deposited into the court registry upon the condemnees' rejection thereof. Swarva, 86 Wash.2d at 30, 541 P.2d 982. After the jury returned a verdict of $107,000, the trial court granted an additur, reasoning the State impermissibly introduced evidence lower than the amount it deposited as an offer of just compensation. Id. We reversed, holding:
[T]he State may not offer in settlement an amount less than the fair market value established by the State's appraisal. However, nothing in the statute prohibits the State from offering an amount in excess of its lowest appraisal, in the interest of a pretrial settlement. Such practice is one purpose of a settlement  to avoid litigation and its resulting cost and delay.
Id. at 33, 541 P.2d 982 (emphasis added). Because the verdict was within the jury's province to decide based on the testimony given, we reinstated the jury's verdict. Id. at 35-36, 541 P.2d 982.
The State is correct Swarva expressly recognizes that no barrier exists to prevent the condemnor from offering a sum greater than the just compensation to which it believes the condemnee is entitled. Id. at 33, 541 P.2d 982. Hence the trial court ruling to the contrary was erroneous.[6] However the Court of Appeals based its affirmance on different grounds, namely RCW 8.26.180. That statute provides in relevant part:
Every acquiring agency shall, to the greatest extent practicable, be guided by the following policies:
(1) Every reasonable effort shall be made to acquire expeditiously real property by negotiation.
....
(3) Before the initiation of negotiations for real property, the acquiring agency shall establish an amount which it believes to be just compensation therefor, and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property.

RCW 8.26.180(1), (3) (emphasis added). The Court of Appeals looked to RCW 8.26.180 to hold "the State [was required] in this case to offer Mr. Costich $191,200 in just compensation when it received" Mr. Jolicoeur's $191,200 appraisal. Costich, 117 Wash.App. at 501, 72 P.3d 190. Building on its holding the court rejected the State's reliance on Swarva, stating "Swarva cannot be read to say that the State need not disclose what its determination of the fair market value is." Id. at 502, 72 P.3d 190 (citing Swarva, 86 Wash.2d at 34, 541 P.2d 982).
While it is true the quoted provisions of RCW 8.26.180 seemingly impose the mandatory obligations on the condemning authority, the legislature expressly rejected this approach. RCW 8.26.205 reads, "The provisions of RCW 8.26.180, 8.26.190, and 8.26.200 create no rights or liabilities and do not affect the validity of any property acquisitions by purchase or condemnation." In addition to omitting any discussion of RCW 8.26.205, the Court of Appeals further ignored express language from Swarva, indicating "RCW 8.26.180 is a guideline statute only, and its terms do not declare rights." Swarva, 86 Wash.2d at 33, 541 P.2d 982.[7]
*800 Moreover the Court of Appeals' qualms with the State's reluctance to disclose its view of just compensation are easily resolved by RCW 8.25.010, which unambiguously mandates:
In all actions for the condemnation of property, or any interest therein, at least thirty days prior to the date set for trial of such action the condemnor shall serve a written statement showing the amount of total just compensation to be paid in the event of settlement on each condemnee who has made an appearance in the action.

(Emphasis added.) It belies common sense to require the condemnor to inform the condemnee in the settlement offer the amount asserted as just compensation when such disclosure is already required separately as a matter of law. This record reveals the State fully complied with RCW 8.25.010 when Mr. Jolicoeur's $191,200 appraisal was received by Mr. Costich's attorney in late November 2001, well before the 30-day cutoff for such disclosure to be made. See CP at 193-94, 333. Mr. Costich makes no assertion the State violated RCW 8.25.010, thus leaving no basis for Mr. Costich to now aver he was unaware of the State's view of how much just compensation it believed Mr. Costich was due.
Despite Swarva, both the Court of Appeals and trial court relied heavily on City of SeaTac v. Cassan, 93 Wash.App. 357, 967 P.2d 1274 (1998) for support. Cassan held a property owner could not use statutory attorney fees,[8] statutory expert witness fees, or deposition costs awarded to augment the condemnee's RCW 8.25.070(1)(b) comparative factor to broaden the gap between the condemnor's offer of settlement beyond the 10 percent threshold. Cassan, 93 Wash.App. at 361-62, 967 P.2d 1274. The court reasoned these items do nothing to foster settlement of just compensation disputes, which is the aim of RCW 8.25.070. Id. at 362, 967 P.2d 1274.
Mr. Costich argues since Cassan held the condemnee could not use attorney fees, expert witness fees, and other factors outside of the jury's determination to broaden the gap between the offer and jury award, the condemnor may not augment its side of the comparative equation with attorney fees, expert witness fees, and other factors to narrow the gap. We reject this argument for two reasons. First, Swarva expressly allows the condemnor to offer sums above and beyond just compensation to settle the litigation. Swarva, 86 Wash.2d at 33, 541 P.2d 982. Second, we are not bound to follow Cassan.
We also question whether Cassan was rightly decided. RCW 8.25.070(1)(b) references "the judgment awarded as a result of the trial" as the condemnee's side of the 10 percent equation, rather than "the just compensation awarded" as stated in Cassan. Compare RCW 8.25.070(1)(b) with Cassan, 93 Wash.App. at 361, 967 P.2d 1274. If a condemnee is entitled as a matter of law to the addition of statutory costs, prejudgment interest, and any other sum, it rationally follows those amounts will always be part of the "judgment awarded as a result of the trial." RCW 8.25.070(1)(b). On the other hand, Cassan raises a good point insofar as these cost items are irrelevant toward promoting settlement. Cassan, 93 Wash.App. at 362, 967 P.2d 1274. But even including the statutory attorney and expert witness fees, costs, and prejudgment interest, the judgment *801 awarded here would still not have exceeded the State's $282,500 settlement offer by 10 percent or greater.
Mr. Costich further argues "highest offer in settlement" must refer to just compensation since that amount is the sole issue determined at valuation trials. See 6A WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 150.03, at 62 (4th ed.2002). This argument lacks merit. Even in stipulated liability lawsuits, parties settle damage issues not because they agree to the amount of the damages owed, but rather to avoid the time, expense, and trouble litigation entails.
The essence of Mr. Costich's objection to the State's "all-inclusive" January 30 offer is summarized in his Court of Appeals brief where he complains the State's refusal to itemize its settlement offer prejudiced him "because it was the amount of any just compensation offer which established the bar Respondents had to `beat' by 10 [percent] at trial in order to recover their fees and expenses." Resp'ts Costichs' Resp. Br. at 6 (emphasis added). This contradicts what RCW 8.25.070(1)(b) expressly references as the comparative factor to be employed by the trial court: "the highest written offer in settlement." Though other parts of Title 8 RCW reference "just compensation,"[9] RCW 8.25.070(1)(b) establishes "the highest written offer in settlement" compared to "the judgment awarded as a result of the trial" as the basis for determining whether attorney fees are owed. It is firmly established as a matter of statutory interpretation that where the legislature uses different language in the same statute, differing meanings are intended. State v. Beaver, 148 Wash.2d 338, 343, 60 P.3d 586 (2002) ("minimum term" and "release date" have different meanings within chapter 13.40 RCW); Haley v. Highland, 142 Wash.2d 135, 147, 12 P.3d 119 (2000) ("separate property" and "community property" in chapter 26.16 RCW have different meanings). The legislature has expressed the condemnor's "highest written offer in settlement" is the basis a trial court must examine to determine whether reasonable attorney fees and expert witness fees are owed, not the condemnor's opinion of just compensation owed. RCW 8.25.070(1)(b).
Mr. Costich nonetheless asserts that this interpretation creates an apples-to-oranges comparison between the jury award (comprised of just compensation alone) and the settlement offer (comprised of just compensation offered in addition to other amounts). Mr. Costich contends this runs afoul of the purpose of RCW 8.25.070, which is to provide the condemnee an additional remedy when the State offers an unreasonably low amount as just compensation and forces the condemnee to litigate the just compensation amount to which he or she is constitutionally entitled. See Roth, 78 Wash.2d at 713, 479 P.2d 55; State ex rel. Wash. State Convention & Trade Ctr. v. Allerdice, 101 Wash.App. 25, 32, 1 P.3d 595 (2000).
First, we do not hold that the condemnee side of the equation is measured merely by the jury award, but rather yield to RCW 8.25.070(1)(b)'s express language referencing "the judgment awarded as a result of the trial." Contra Cassan, 93 Wash.App. at 361-62, 967 P.2d 1274. Second, even if we did hold the jury award alone serves as the basis for measuring the condemnee's side of the comparative equation, Mr. Costich's argument would in essence attack the wisdom behind the statute. Courts will not undertake such an inquiry absent any issue affecting constitutional rights. Davis v. State ex rel. Dep't of Lic., 137 Wash.2d 957, 976 n. 12, 977 P.2d 554 (1999).
Therefore the State need not itemize its settlement offer to comply with chapter 8.25 RCW.

II. 30-day period
As an alternative for upholding the trial court's declaratory ruling, Mr. Costich *802 argues the January 30 settlement offer's failure to remain open for a 30-day period mandated its invalidation. This court may affirm a lower court's ruling on any grounds adequately supported in the record. In re Marriage of Rideout, 150 Wash.2d 337, 358, 77 P.3d 1174 (2003). As Mr. Costich adequately presented this argument below, we address its merits.
The operative language at issue stems from the same statutory provision discussed supra. Again, the statute provides the settlement offer to which the jury award is compared is the "highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial." RCW 8.25.070(1)(b) (emphasis added). Both parties contend the plain language of the emphasized words support their view. The State claims the plain language of the statute requires the offer to be operative merely 30 days before trial, regardless of whether the offer subsequently lapses, is revoked, or is rejected. In other words, the State proffers a construction of temporal proximity. The State argues the trial court's interpretation impermissibly adds the word "for" between "in effect" and "30 days." See Kilian v. Atkinson, 147 Wash.2d 16, 20, 50 P.3d 638 (2002) (court will not "add language to an unambiguous statute even if it believes the Legislature intended something else but did not adequately express it"). Mr. Costich, on the other hand, argues the State's interpretation wrongfully modifies the language to read "in effect [on the 30th day] before trial," thereby requiring affirmance of the lower courts' holdings.
The statute certainly may be read either way, and resolution of this issue would be much simpler had the legislature used more clarity when drafting the text. The statute's ambiguity permits this court to look beyond the plain language of the statute and examine the circumstances leading to its enactment. Mahoney v. Shinpoch, 107 Wash.2d 679, 684, 732 P.2d 510 (1987). A review of these circumstances reveals "in effect 30 days before trial" imposed a temporal proximity requirement rather than a durational requirement.
Prior to 1984 the comparative factor was the "the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor at least thirty days prior to commencement of said trial." Former RCW 8.25.070(1)(b) (LAWS OF 1971, 1ST Ex.Sess. ch. 39, § 3) (emphasis added). This language was construed in State v. Olson, 31 Wash.App. 403, 642 P.2d 410 (1982), in which the condemnees rejected a $90,000 settlement offer tendered by the State prior to a flood severely damaging their property. Id. at 404-05, 642 P.2d 410. The State subsequently offered $35,000, which the condemnees rejected, and obtained a jury award of $57,000. Id. at 505, 642 P.2d 410. The Court of Appeals affirmed the trial court's denial of reasonable attorney and expert witness fees since the $90,000 offer, though made five months before the flood and over a year before the valuation trial, was "literally ... the highest written offer in settlement." Id. at 405, 642 P.2d 410. Conceding the result was "unfair and injudicious," id. at 406, 642 P.2d 410, the court expressed its concern and recommended the legislature modify the statute to "compar[e] ... the amount awarded by the jury with the last offer in effect prior to trial." Id. at 407, 642 P.2d 410 (emphasis added). The court continued, "Because of these perceived inequities, we believe the statute should be amended so as to base attorney and witness fee entitlement on the highest written offer in settlement in effect 30 days before trial." Id. (emphasis added). In direct response the legislature adopted the exact wording used by Olson to amend RCW 8.25.070. LAWS OF 1984, ch. 129, § 1; see also 1984 FINAL LEGISLATIVE REPORT, 48th Wash. Leg., at 139.[10]
*803 It is clear from Olson the intent behind the amendment was to impose a temporal proximity requirement rather than a durational requirement. Mr. Costich argues this interpretation would allow the condemnor to escape the requirement by tendering an offer on the 30th day before trial "only to have it expire mere hours later." Supp'l Br. of Resp'ts at 14. There may be factual scenarios where the State's hasty withdrawal of its settlement offer might be enough to invalidate it, but we do not opine when or if those circumstances exist. As with his itemization argument, Mr. Costich advances arguably good policy for the imposition of such a durational requirement on the State's offer. Again though, such policy debates are for the legislature to resolve, not the courts. State v. Gentry, 125 Wash.2d 570, 629, 888 P.2d 1105 (1995).

CONCLUSION
We hold the State need not itemize in a condemnation settlement offer its opinion of the just compensation owed. We further hold the settlement offer need not remain open for a 30-day period to remain valid. The State's January 30, 2002 "all-inclusive" settlement offer that remained open for eight days was a valid offer to which "the judgment awarded as a result of the trial" was to be compared. RCW 8.25.070(1)(b). Mr. Costich was therefore not entitled to an award of reasonable attorney fees and expert witness fees because the judgment awarded as a result of trial did not exceed the $282,500 offer by 10 percent or more. Id.
The Court of Appeals is reversed, and we remand the case to the Spokane County Superior Court for further proceedings consistent with this opinion.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ.
NOTES
[1] Mr. Costich passed away before the jury trial. The current respondent, Phillip's brother Elroy, substituted in as a party both in his individual capacity and in his capacity as trustee of Mr. Costich's living trust. Clerk's Papers (CP) at 108-10. In the interest of simplicity we will refer to respondents as "Mr. Costich."
[2] See RCW 8.04.090-.094. These statutes enable the State when condemning property by way of eminent domain to acquire immediate possession and use by paying its offer of just compensation into the court registry for the condemnee's benefit. In exchange for surrendering immediate possession of the condemned property, the condemnee may immediately withdraw such funds while still pursuing a judicial determination of the total just compensation to be paid.
[3] A condemnee who withdraws the amount of the State's tendered offer is entitled only to the amount the jury verdict exceeds the offer, plus statutory interest. RCW 8.04.092.
[4] Mr. Costich cross-appealed to Division Three, claiming the trial court erred in another ruling by vesting title in the State despite the State's payment of just compensation alone. He argued the State was bound to pay the full judgment (just compensation, attorney fees, expert fees, etc.) before title could vest. The Court of Appeals rejected this argument, Costich, 117 Wash.App. at 502-08, 72 P.3d 190, and Mr. Costich did not separately seek review of that holding. It is therefore not within the scope of our review. RAP 13.7(b).
[5] The condemnee is however precluded from such an award if he or she did not stipulate to the condemnor's immediate possession and use within 30 days of the condemnor's written request or within 15 days after an order adjudicating public use. RCW 8.25.070(3); see also State ex rel. Wash. State Convention & Trade Ctr. v. Allerdice, 101 Wash.App. 25, 31-32, 1 P.3d 595 (2000).
[6] The trial court held the offer was invalid based on its "opinion that ... the settlement offer to be made [pursuant to RCW 8.25.070] is the just compensation to be paid for the property." Verbatim Report of Proceedings RE: Oral Ruling (Feb. 14, 2002) at 6.
[7] When the State actually received Mr. Jolicoeur's appraisal is not entirely clear. The State asserts in its briefing Mr. Jolicoeur's appraisal was not completed until November 2001 and was subsequently revised the following month. See Pet. for Review at 3 n. 2. This however counters the factual account provided by the Court of Appeals, which stated Mr. Jolicoeur's appraisal was received by the State on August 21, 2001. State v. Costich, 117 Wash.App. 491, 496, 72 P.3d 190 (2003). The record shows Mr. Jolicoeur merely inspected the Costich property in August, rather than completed his appraisal at that time. See CP at 34-35. However the record is unclear as to exactly when Mr. Jolicoeur finished the appraisal. The record does include an October 1, 2001 letter from the attorney general's office indicating Mr. Jolicoeur had yet to finish his appraisal. See CP at 310. This lends some support for the view Mr. Jolicoeur did not finish his appraisal until November 2001. Regardless, the absence of any duty imposed by RCW 8.26.180 renders this factual dispute immaterial to our ultimate disposition.
[8] See former RCW 4.84.080(1) (1985), amended by LAWS OF 2004, ch. 123, § 1. The 2004 amendment increased the statutory attorney fee rate from $125 to $200. It took effect June 10, 2004.
[9] See, e.g., RCW 8.04.092 ("The amount paid into court shall constitute just compensation paid for the taking of such property." (emphasis added)); RCW 8.04.094 (imposing time restriction "to demand a trial for the purpose of assessing just compensation and damages arising from the taking" (emphasis added)); RCW 8.25.010 (quoted supra); RCW 8.25.120 (providing discovery procedures for "the production and exchange of the written conclusions of all the appraisers of the parties as to just compensation owed to the condemnee" (emphasis added)).
[10] While the final legislative report does not reference Olson by name, it does indicate its motives for amending RCW 8.25.070 were because of "a recent case [in which] attorney's fees were denied where shortly before trial a flood reduced the value of the property and the state reduced its settlement offer." 1984 FINAL LEGISLATIVE REPORT, 48th Wash. Leg., at 139. Moreover, the legislative file for Engrossed Senate Bill 3128 contains a letter from legislative counsel to Mr. Olson indicating Senator Talmadge, the bill's sponsor, introduced the bill in response to the decision. See letter from Kyle Aiken to Eugene Olson et al. (Jan. 10, 1983) (on file with Washington State Archives).