775 So.2d 1054 (2000)
STATE of Louisiana
v.
Lee Edward DONALD.
No. 99-K-3612.
Supreme Court of Louisiana.
December 8, 2000.
*1055 Richard P. Ieyoub, Attorney General, Paul Carmouche, District Attorney, Catherine Marion Estopinal, Brian Lee King, Counsel for Applicant.
Peggy J. Sullivan, Counsel for Respondent.
PER CURIAM.
Over a century ago, the Supreme Court observed in Jacksonville, M., P. Ry. & Nav. Co. v. Hooper, 160 U.S. 514, 518-19, 16 S.Ct. 379, 381, 40 L.Ed. 515 (1896) that "[a] seal is not necessarily of any particular form or figure.... Whether a mark or character shall be held to be a seal depends upon the intention of the executant, as shown by the paper." In the present case, the Second Circuit acknowledged that a booking and identification record used at trial to identify respondent as a previously convicted felon bore an official stamp of the Los Angeles Police Department, and that "the substance of the document may be considered trustworthy and clearly admissible under the exception to the hearsay rule for public documents, La. C.E. art. 803(8)[.]" State v. Donald, 32,415 pp. 6-7 (La.App. 2nd Cir.10/27/99), 745 So.2d 144, 148-49 (Brown, J., dissenting). The court of appeal nevertheless concluded that the stamp did not constitute a "seal" for purposes of La.C.E. art. 902(1) governing the self-authentication of documents, and that the trial court therefore erred in admitting the document into evidence. Id. The Second Circuit's decision rested in part on a definition of a public seal as `"[a]n impression made of some device, by means of a piece of metal or other hard substance, kept and used by public authority.'" Donald, 32,415 at 6, 745 So.2d at 149 (quoting Black's Law Dictionary (6th ed. 1990)). We granted the state's application and reverse the decision below because the court of appeal adopted an overly technical approach to the authenti-fication of public records under La.C.E. art. 902 which conflicts with the mandate of La.C.E. art. 102 that "[t]hese articles shall be construed to secure fairness and efficiency in administration of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."
The state charged respondent as a previously convicted felon of possession of a firearm in violation of La.R.S. 14:95.1. In response to the state's motion in limine, the trial court conducted a pre-trial hearing to determine the admissibility of documents from California relating to respondent's conviction in Los Angles County for voluntary manslaughter in 1985. The documents included a Booking and Identification Record subsequently introduced at trial as state's exhibit S-2. On the face of the document is an inked thumbprint of an Edward Lee Donald arrested on December 14, 1984, for murder. On the back of the exhibit is a stamp attesting that "[t]his is a certified copy of the document filed in the Lost Angles Police Department's Records & Identification Division." The certificate *1056 is signed and dated. Next to this certificate is a circular inked stamp of the Los Angles Police Department with its motto, "To protect and To Serve." Defense counsel objected at the hearing that the originals of the documents, and not copies, should have been provided and that not every page in the state's submission, which also included court records of the proceedings against respondent culminating in his conviction for voluntary manslaughter, was individually certified. However, counsel did not otherwise dispute the state's assertion that the documents were "under seal from the Los Angles Police Department." The trial court ruled that the documents were "properly authenticated under the Code of evidence," and at trial the state's fingerprint expert used the booking record to identify respondent after taking his fingerprints in open court. Although defense counsel's objection to the California documents did not specifically target the adequacy of the seal placed on the Booking and Identification Record, the court of appeal considered the issue adequately preserved and reversed the trial court's ruling according to its own appreciation of what Louisiana law requires for the self-authentication of public records.
La.C.E. art. 904 provides that "[w]hen an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1),(2), or (3)." La.C.E. art. 902(1) sets forth two requirements for admitting public records from other jurisdictions without extrinsic evidence of authenticity. The document must reflect: (1) "a seal purporting to be that of the United States, or of any state ... or of a political subdivision, department, officer, or agency thereof," and (2) "a signature purporting to be an attestation or execution." Neither La. C.E. art. 902 nor any other provision in the Code of Evidence specifically defines a seal.
Louisiana's statutory law is replete with references to seals, some of which are partially descriptive of raised or embossed impressions. See, e.g., La. R.S. 13:4 ("The clerks of the Supreme Court and the several courts in the parish of Orleans each shall have a seal containing the vignette of the state seal.... Embossed under the court's name shall be the scales of justice supported by the Louisiana Pelican with its young...."); La.R.S. 9:226(B) ("A person born outside of Louisiana may submit a copy of his birth certificate under the raised seal or stamp of the vital statistics registration authority of his place of birth."). However, unlike other jurisdictions, Louisiana law lacks a general definition of the term. At the federal level, for example, 18 U.S.C. § 114 provides that "[i]n all cases where a seal is necessary by law to any commission, process, or other instrument provided for by the laws of Congress, it shall be lawful to affix the proper seal by making an impression therewith directly on the paper to which such seal is necessary; which shall be as valid as if made on wax or other adhesive substance." California, the source of the contested document in the present case, expressly provides that "[a] public seal in this State is a stamp or impression made by a public officer with an instrument provided by law, to attest the execution of an official or public document, upon the paper, or upon any substance attached to the paper, which is capable of receiving a visible impression." Cal. Civ. Proc.Code § 1931 (emphasis added).
While authority exists that an inked stamp does not constitute a seal, see United States v. Dockins, 986 F.2d 888, 894 (5th Cir.1993) ("[T]he certification on the fingerprint card is only a rubber stamp."), other authority, over a century old and therefore dating from the time when seals commonly were made in wax, holds that an inked scroll containing the initials of the *1057 executant may constitute a seal according to the intent of the parties. Burton v. Le Roy, 4 F. Cases 867 (C.C.D.Cal.1879) (No. 2,217), 5 Sawy. 510, 515 ("[T]he wax itself is not the seal, but the impression upon the wax; that the wax is only the medium for receiving the impression; and in modern times it is held that if the wax were removed, and the impression made upon the paper itself, the instrument would still bear a seal, as the impression, and not the wax, constitutes a seal."); see also Pillow v. Roberts, 54 U.S. (13 How.) 472, 474, 14 L.Ed. 228 (1851) ("It is the seal which authenticates, and not the substance on which it is impressed; and where the court can recognize its identity, they should not be called upon to analyze the material which exhibits it.").
Guided by the century-old admonition of the Supreme Court that the intent of the executant is of primary importance in determining whether a document bears a "seal," we conclude that for purposes of La.C.E. art. 902, as long as the document bears an impression made by a public office or officer intended to designate it as an authentic public record or a copy thereof, the document has been properly "sealed." See 31 Charles Alan Wright and Victor James Gold, Federal Practice and Procedure, Evidence, § 7135 (2000) ("[S]o long as the seal appears to afford some degree of protection against forgery, it should be sufficient to perform the function that [Fed.R.Evid. 902] assumes for it. Seals that are embossed, engraved, or even stamped may be sufficient.") (footnote omitted). We employ the term "impression" according to its common use, i.e., as "the act of impressing ... as affecting by stamping or pressing...." Webster's New Collegiate Dictionary (G. & C. Meerriam Co. 1977); see also Black's Law Dictionary (5th ed. 1979) (defining stamp as "[a] mark, design, seal, etc., which indicates ownership, approval, etc. An identifying or characterizing mark or impression.") (emphasis added). Accordingly, the stamp or seal must result from an impression actually made upon the document itself. We therefore agree with the observation of the Fourth Circuit in State v. Langlois, 94-0084, p. 13 (La.App. 4th Cir.5/21/97), 695 So.2d 540, 547-48, writ granted in part and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281 that "the `seal' referred to in articles 902 and 904 [of the Code of Evidence] is something that is annexed or affixed to the document, not a letter head on stationary." See 31 Wright & Gold, § 7135 ("[A] seal printed as part of letterhead stationery may be an insufficient indicator of authenticity since anyone with access to an example of that stationery, which could include many people with no official status, has access to the official seal.") (citing Langlois). However, apart from this requirement, the intent of the executant remains determinative.
We note that even in such a sensitive area as public finance Louisiana no longer requires embossed or raised seals to authenticate the acts of its public officers. La. R.S. 39:244(C) expressly provides that "[w]hen the seal of the state of Louisiana or any of its departments, agencies, or other instrumentalities or of any of its political subdivisions is required in the execution of a public security or instrument of payment, the authorized officer may cause the seal to be printed, engraved, stamped or otherwise placed in facsimile thereon. The facsimile seal has the same legal effect as the impression of the seal." See also State v. Huggins, 659 P.2d 613, 618 (Ak.App.1982) ("We believe [Alaska's statutes] which make proffering false evidence a felony, act as sufficient deterrents to the illegal use of an official's facsimile signature or seal so as to justify reliance on facsimiles.") (footnote omitted). In the present case, the inked stamp of the Los Angeles Police Department impressed on the back of the Booking and Identification Record next to the signed certificate clearly manifests the intent of the executant to place a "seal" of authenticity on that public document in accord with California law. We fail to see *1058 how raising the ridges on that seal with a metallic instrument would offer any greater assurance of authenticity. Jacksonville, M., P. Ry., 160 U.S. at 518, 16 S.Ct. at 381 ("It is time that such objections to the validity of seals should cease."). Nothing in the record even remotely suggests the possibility of a forgery. In fact, the defense offered before trial to stipulate to the validity of respondent's prior conviction in California in an effort to preclude the state from introducing the documents at trial and thereby informing jurors of the nature of that prior conviction. See Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (a defendant's stipulation as to his prior conviction may preclude government from introducing documentary evidence identifying a prior offense for jurors in a prosecution under 18 U.S.C. § 922(g)(1), felon in possession of a firearm); but see State v. Ball, 99-0428 (La.11/30/99), 756 So.2d 275 (distinguishing Old Chief in Louisiana prosecutions for violations of La.R.S. 14:95.1). The Second Circuit therefore erred in holding that the copy of the Booking and Identification Record had not been properly sealed for purposes of admitting it as self-authenticating document under La.C.E. art. 902(1) and art. 904.
In addition, anticipating retrial of this case, the court of appeal addressed a second evidentiary question likely to arise again. On the morning of trial, with jury selection about to begin, the state asked for a ruling from the trial court regarding the admissibility of testimony from its principal witness, Alveria Collins, that on the day before his arrest, respondent had exposed himself to her during a chance encounter while she was on the way to school. The state contended that the incident was an integral part of the charged offense which occurred on the following afternoon, when Collins pointed out respondent to her Grandmother, Sandra Gilliam, and identified him as the "guy who exposed his privacy." Respondent produced a firearm and approached Alveria and her grandmother in a threatening manner. Gilliam instructed another granddaughter to call the Shreveport police. Officers responding to the complaint located respondent within a few blocks of where the incident occurred and arrested him. The officers retrieved a semi-automatic pistol from the ground near the location where they first spotted respondent. Of the three women involved in the incident, only Alveria Collins identified respondent on the scene and in court as the person involved in the armed assault.
The trial court ruled that it would not restrict the state "to showing just what happened with regard to that moment in time where there is a firearm produced by the defendant or the moment where he is in possession of a firearm because it is ... intertwined and in the context with what occurred the other day with regard to the identity and identification issue." However, the Second Circuit concluded that "the `exposure' incident ... was not integral or inseparable from the events surrounding the offense committed by Donald on the following day." Donald, 32,415 at 8, 745 So.2d at 150. In the Second Circuit's view, Collins's testimony with regard to the exposure incident was not essential to the state's case because "the jury did not need to know why the defendant pulled the handgun, only that the defendant had possessed one." Id. Although it viewed the introduction of the testimony harmless because the jury's verdict "was surely un-attributable to the error," the Second Circuit addressed the merits "in view of the remand of this case for [re]trial." Donald, 32,415 at 9, 745 So.2d at 150.
The trial court made the correct ruling. We need not decide here whether the exposure incident of the day before formed an integral part of the charged offense. See State v. Colomb, 98-02813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 ("We have required a close connexity between the charged and uncharged conduct to insure that the purpose served by admission *1059 of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'") (quoting State v. Haarala, 398 So.2d 1093, 1098 (La.1981)). Apart from any considerations of res gestae or integral act evidence, "matters which are ... logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses." State v. Constantine, 364 So.2d 1011, 1014 (La.1978). Alveria Collins's opportunity to view respondent during the exposure incident provided jurors with the context in which to evaluate her identification of respondent a day later. Collins was the only witness on the scene to make that identification, and her testimony formed a critical part of the state's case as it provided jurors with direct evidence that defendant possessed the firearm recovered at the time of his arrest, not in his possession but on the ground near where he had been standing when the police approached him. See State v. Banks, 307 So.2d 594, 599-600 (La.1975) (evidence of prior narcotics sale made by defendant to same police officer relevant to officer's identification of defendant on charged crime). Officer Jerry Curtis saw respondent reach into his back pocket and then throw "a dark object on the ground" but could only surmise that the object was the weapon he then recovered from the grassy area as his partner frisked respondent. While the officer insisted that "[t]here was nothing else in the area," he also conceded that his police report made no mention of respondent throwing down anything. In his cross-examination of the witnesses and in closing argument, defense counsel sharply attacked the credibility of Collins's identification and of police testimony that several days after his arrest in an unrecorded statement respondent admitted that he had possessed the weapon.
In this context, the probative value of Collins's testimony about the exposure incident on the credibility that respondent committed the subsequent aggravated assault clearly outweighed its potential for unduly prejudicing respondent, particularly in a case in which jurors would properly learn of his prior conviction in California for manslaughter. Counsel made no argument in the trial court that the state had not afforded him timely notice of its intent to introduce the evidence, and he had otherwise obtained disclosure of the essential aspects of the state's case at the preliminary hearing conducted by the court several months before trial. The Second Circuit therefore erred in finding that the trial court had improperly admitted the evidence.
Accordingly, the decision of the Second Circuit is reversed and this case is remanded to the court of appeal for consideration of the remaining assignments of error pretermitted on original appeal.
REVERSED AND REMANDED.