[No. 36725-4-II.   Division Two.   December 23, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN LAMONT HARRIS, *Appellant*.

24

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Steven Harris appeals the calculation of his offender score following his guilty plea conviction of first degree theft. He argues that the State failed to present certified copies of the judgments and sentences and did not demonstrate why those documents were unavailable and, therefore, the trial court erred when it admitted other evidence to prove his prior convictions. This is a rare situation in which the defendant did not waive objection to his offender score when he pleaded guilty. We hold that this case is moot because Harris has been released into the community, he is not on community custody, and a prior offender score computation does not control a defendant's future sentence for a subsequent crime. Nevertheless, we address the issue on the merits because it is one of substantial public interest, and we conclude that the State met its burden, albeit belatedly, to prove that the Louisiana documents it submitted were certified judgments and sentences. We affirm.

## FACTS

¶2 The State charged Harris by third amended information with one count of first degree theft. Harris pleaded guilty but challenged the use of several out-of-state prior convictions in calculating his offender score. Among other things, he argued that the State failed to prove the validity of five prior Louisiana convictions because it did not present certified judgment and sentences. The State did not argue that the documents it presented were certified judgment and sentences or that it could not present such evidence. The sentencing court held that the Louisiana documents were not certified but that they were admissible because the rules of evidence are relaxed during sentencing hearings. On August 29, 2007, the sentencing court calculated Harris's offender score as 5 and sentenced him to 16 months of confinement. It did not impose community custody. Harris concedes that he has been released into the community.

¶3 Harris appeals.

## ANALYSIS

MOOTNESS

¶4 A case is moot if a court can no longer provide effective relief. *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (quoting *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995)). The issue of Harris's offender score calculation is moot because he has been released from confinement, is not on community custody, and is not subject to another miscalculation based on this alleged error if he is convicted of another crime in the future.

¶5 There are only two forms of effective relief from an excessive sentence that results from an offender score miscalculation. If a defendant received an excessive sentence and is still confined, we can order resentencing that

will result in his timely release from confinement. *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 123 P.3d 456 (2005) (holding that, upon resentencing, the State may not present evidence pertaining to criminal history that it failed to introduce at original sentencing hearing). But Harris is no longer confined. And if an offender is on community custody that should have begun earlier than it did (because he should have been released earlier), upon resentencing the trial court may modify the termination date of his community custody. *See* RAP 12.2; *State v. Jorgenson*, 48 Wn. App. 205, 208, 737 P.2d 1277 (1987) (holding that trial court has no jurisdiction to modify community custody term after it expires). But Harris was not sentenced to community custody.

¶6  Harris argues that this case is not moot because, if he is convicted of another crime, the future sentencing court could use his offender score calculation for the present conviction as proof of his offender score for the subsequent conviction. That is incorrect. A sentencing court is required to calculate the defendant's offender score on "the date of sentencing for the offense for which the offender score is being computed." RCW 9.94A.525(1). When, as here, the defendant enters a guilty plea and objects to his criminal history calculation, the "disputed issues as to criminal history shall be decided at the sentencing hearing." RCW 9.94A.441. If the defendant objects, at sentencing the State must prove prior convictions by the preponderance of evidence with either a certified judgment and sentence or, if none is available, other comparable evidence. *State v. Bergstrom*, 162 Wn.2d 87, 93, 169 P.3d 816 (2007) (citing *Cadwallader*, 155 Wn.2d at 876; *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002)).

¶7  Further, a prior judge's criminal history computation is not evidence of a certified judgment and sentence because Washington's sentencing law has been amended approximately 200 times in the 27 years since the legislature enacted the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *In re Pers. Restraint of Dalluge*, 162 Wn.2d 814, 818

n.1, 177 P.3d 675 (2008) (noting that the SRA is tradition-ally amended several times each year); *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 7, 100 P.3d 805 (2004) (tallying 181 SRA amendments between 1981 and 2004). "Any sentence imposed under [the SRA] shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345. Accordingly, a future sentencing court may not simply rely on a criminal history from a previous judgment but must compute the offender score anew at any future sentencing hearing. If history is any indicator, the SRA is likely to have been amended since Harris's offender score was computed in this case.

¶8 We hold that Harris's challenge to the computation of his offender score is moot. Even if improperly computed, we cannot provide effective relief because Harris is not incarcerated or on community custody and because his offender score computation will not affect a hypothetical future sentence. *See Ross*, 152 Wn.2d at 228.

██ ¶9 But "we have the power to decide a moot case to resolve issues of 'continuing and substantial public interest' if guidance would be helpful to public officers and the issue is likely to recur." *Dalluge*, 162 Wn.2d at 819 (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). As the parties acknowledged at oral argument, this is an issue of substantial public interest because we are asked to determine what, as a matter of law, constitutes a certified Louisiana judgment and sentence. This issue is likely to recur, as Louisiana judgment and sentences will surely be admitted as evidence in other cases. Further, the Louisiana legal system differs significantly from other states[1] and our guidance may therefore be particularly helpful to public officers. Accordingly, although this case is

---

[1] *See* Daniel Engber, *Louisiana's Napoleon Complex: The French influence on Pelican state jurisprudence*, SLATE, Sept. 12, 2005, http://www.slate.com/id/2126126/ (last visited Nov. 26, 2008); Wikipedia: The Free Encyclopedia, Louisiana Law, http://en.wikipedia.org/wiki/Louisiana_law (last visited Nov. 26, 2008) (explaining that Louisiana partially derives its legal system from the French and Spanish codes, rather than the English common law system that the other 49 states use).

moot, it is proper for us to resolve the substantive issue on the merits.

WAIVER

¶10 Although the parties do not argue waiver, we first address this issue because a defendant who enters a guilty plea generally waives the right to challenge his criminal history, unless the computation of his offender score was not authorized by statute. *Cadwallader*, 155 Wn.2d at 875. A guilty plea generally waives challenges to the defendant's offender score because a defendant's agreed standard range sentence is based in part on his criminal history and because guilty plea agreements usually contain a stipulation to criminal history. *See Cadwallader*, 155 Wn.2d at 875.

¶11 Here, however, Harris did not waive his right to raise this issue. Harris's standard range sentence in his plea agreement was "[t]o be determined at a later date" and, therefore, was not calculated according to a stipulated criminal history. Clerk's Papers (CP) at 9. Clause 6(c) of the guilty plea form states, "The prosecuting attorney's statement of my criminal history is attached to this agreement. Unless I have attached a different statement, I agree that the prosecuting attorney's statement is correct and complete." CP at 9. But the prosecuting attorney did *not* attach a statement of criminal history and Harris, therefore, did not waive his right to contest his criminal history by signing the plea agreement containing this clause. Moreover, the State submitted a declaration of criminal history after Harris entered his guilty plea, but Harris did not sign or otherwise stipulate to the document. In short, this is an unusual situation in which the defendant retained the right to contest his criminal history when he entered a guilty plea.

ADMISSION OF LOUISIANA COURT DOCUMENTS

¶12 Harris argues that the State failed to meet its burden to prove the existence of his five prior Louisiana

convictions because it did not produce certified judgments and sentences of these convictions and did not argue why such documents are unavailable. We disagree.

¶13 "The State bears the burden of proving the existence of prior convictions by a preponderance of the evidence." *Bergstrom*, 162 Wn.2d at 93 (citing *Cadwallader*, 155 Wn.2d at 876; *Lopez*, 147 Wn.2d at 519). "The best evidence to establish a defendant's prior conviction is the production of a certified copy of the prior judgment and sentence." *Bergstrom*, 162 Wn.2d at 93 (citing *Lopez*, 147 Wn.2d at 519). The State may introduce other comparable evidence only if it shows that a certified copy of the judgment is unavailable for some reason other than the serious fault of the proponent. *Lopez*, 147 Wn.2d at 519 (citing *State v. Fricks*, 91 Wn.2d 391, 397, 588 P.2d 1328 (1979)).

¶14 Here, the State presented packets of documents for each of the five alleged Louisiana convictions, each containing (1) a felony bill of information; (2) a page containing a stamp with specific language, the defendant's fingerprints, and a signature; and (3) an extract of court minutes for the trial court judge's oral sentencing ruling. These documents are not obviously judgment and sentences of the sort Washington courts issue and the State failed to argue to the trial court that they were judgment and sentences. This is a technical procedural error, but parties are not foreclosed from presenting new legal authority on appeal. RAP 10.8. Moreover, we review the law de novo and may affirm a correct trial court ruling on any ground the record adequately supports. RAP 10.8; *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004); *State v. Johnson*, 128 Wn.2d 431, 443 & n.43, 909 P.2d 293 (1996) (citing *State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995)).

¶15 For the first time on appeal, the State cites a Louisiana statute defining that state's documentary proof of judgment and sentence, Louisiana Code of Criminal Procedure article 871. The State also relies on *State v. Donald*, 99-3612 (La. 12/8/00), 775 So. 2d 1054, 1057, in

which the Louisiana Supreme Court defined how its state "seals" public documents. Based on this Louisiana law, we hold that the trial court did not err in admitting the State's documentary evidence as sufficient proof of Harris's criminal history.

¶16 In Louisiana, a judgment is documented as a felony bill of information attached to a copy of the defendant's fingerprints, a certificate regarding the fingerprints, and the signature of the law enforcement officer who has custody of the defendant. LA. CODE CRIM. PROC. ANN. art. 871(B)(1).[2] Having scrutinized the State's evidence, we hold that the State presented judgments conforming to the Louisiana statute.

¶17 Further, under the same Louisiana statute, a sentence is pronounced orally and is documented only in the court minutes. LA. CODE CRIM. PROC. ANN. art. 871(A). Here, the State submitted the relevant court minutes and, therefore, submitted the documents necessary to prove Louisiana sentences. Accordingly, we hold that the State presented judgments and sentences for each of the five prior Louisiana convictions.

---

[2] That statute reads, in relevant part:

A. A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt. Sentence shall be pronounced orally in open court and recorded in the minutes of the court.

B. (1)(a) In every judgment of guilty of a felony or of one of the misdemeanors enumerated in Subparagraph (2) of this Paragraph, the sheriff shall cause to be attached to the bill of indictment or information the fingerprints of the defendant against whom such judgment is rendered.

(b)(i) Beneath such fingerprints shall be appended a certificate to the following effect:

"I hereby certify that the above and foregoing fingerprints on this bill are the fingerprints of the defendant, and that they were placed thereon by said defendant this _____ day of _____, _____."

(ii) The certificate shall be signed by the sheriff or other law enforcement officer who has custody of the defendant.

. . . .

C. The certificate required by Paragraph B of this Article shall be admissible in evidence in the courts of this state as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony or one of the enumerated misdemeanors was rendered.

LA. CODE CRIM. PROC. ANN. art. 871.

¶18 We next turn to whether the judgment and sentences were certified. The only contentious issue on appeal is whether the documents the State presented were "sealed." Under RCW 5.44.010, documents are not certified unless the state seal is annexed to it. Louisiana deems a public document "sealed" if the "document bears an *impression* made by a public office or officer intended to designate it as an authentic public record or a copy thereof." *Donald*, 775 So. 2d at 1057 (emphasis added).

¶19 The "impression" requirement, in turn, is very specific. *Donald*, 775 So. 2d at 1057. A "stamp or seal" is required, but it need not be raised or embossed on the paper; the *Donald* court specifically approved of the use of ink stamps for this purpose. 775 So. 2d at 1057-58. "[T]he stamp or seal must[, however,] result from an impression actually made upon the document itself." *Donald*, 775 So. 2d at 1057. The Louisiana high court specified that letterhead stationary or other marks that are contained in the original document do not satisfy this "impression" requirement because the mark must be "annexed or affixed" to the document to protect against forgery. *Donald*, 775 So. 2d at 1057 (citing 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 7135 (2000)).

¶20 Here, the State argues that both the felony informations and the court minutes contain seals under Louisiana law. This is incorrect. The informations contain ink stamp marks that were pressed upon the documents and signed by an official, satisfying the "impression" requirement set forth in *Donald*, 775 So. 2d at 1057. But the extract minutes merely contain a signature written onto signature lines that are part of the original document printing. These are not stamps or seals "actually made upon the document itself" but, rather, are more akin to letterhead, which does not fulfill the Louisiana impression requirement. *Donald*, 775 So. 2d at 1057. We clarify this distinction, however, only because it is of public import when alleged Louisiana sealed documents are introduced in Washington courts in the future.

¶21 RCW 5.44.010 requires that the seal is "annexed" to the court record. "Annex" means "to affix as an authoritative sanction." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 45 (1976). Here, both parties agree that the State's evidence for each conviction was presented as a package or bundle. As the felony information was the first page of each package and it contained a state seal, we hold that the seals were affixed, or attached, to each multipage judgment and sentence. In summary, the State presented certified judgments to prove Harris's prior convictions and the trial court did not err when it admitted those documents as sufficient proof of Harris's prior convictions. Accordingly, we affirm.

PENOYAR, A.C.J., and BRIDGEWATER, J., concur.