# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50243-7-II |
| Respondent, | |
| v. | |
| RODERIC ANDRE BARRINGTON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Roderic Barrington appeals his conviction and sentence for first degree robbery with a firearm enhancement. He argues that the sentencing court erred in not performing a comparability analysis on one of his prior out-of-state convictions. He also argues that the sentencing court abused its discretion by failing to consider mitigating circumstances allegedly justifying an exceptional sentence below the standard range. In his statement of additional grounds (SAG), Barrington challenges the sufficiency of the evidence supporting his robbery conviction.

We hold that Barrington waived the issue of whether his prior out-of-state conviction is comparable to a Washington offense by stipulating to its comparability. We further hold that the sentencing court did not abuse its discretion because it considered, but rejected, Barrington's argument that mitigating circumstances justified an exceptional sentence downward. Finally, we reject Barrington's assertion that insufficient evidence supports his robbery conviction. Accordingly, we affirm.

FACTS

A. STIPULATION TO CRIMINAL HISTORY

A jury found Barrington guilty of first degree robbery and a firearm enhancement. Before sentencing, Barrington filed a stipulation to his criminal history and offender score. He stipulated to the inclusion of five prior felony convictions in the calculation of his offender score for the first degree robbery conviction. As relevant here, Barrington stipulated to the inclusion of an out-of-state class B felony conviction for burglary and an out-of-state class C felony conviction for grand larceny. He specifically "stipulate[d] that any out-of-state convictions listed below [were] equivalent to Washington State felony convictions of the class indicated, per RCW 9.94A.360(3)[ and RCW] 9.94A.525." Clerk's Papers (CP) at 81. Barrington also stipulated to an offender score of 5 with a standard range sentence of 57 to 75 months for the first degree robbery conviction and an additional 60-month sentence for the firearm enhancement, with a total standard range sentence of 117 to 135 months.

B. MOTION FOR EXCEPTIONAL SENTENCE

Barrington filed a motion for an exceptional sentence below the standard range based on mitigating circumstances. In the motion, he acknowledged that his criminal history supported an offender score of 5 with a standard range sentence of 57 to 75 months, along with an additional 60-month sentence on the firearm enhancement. However, Barrington argued that the following mitigating circumstances justified an exceptional sentence downward: (1) the standard range sentence for first degree robbery with a firearm enhancement was "far in excess of any sentence [Barrington] ha[d] served before," (2) Barrington's "victim was an . . . 'aggressor or provoker of the incident,'" and (3) Barrington had "no apparent predisposition" to commit first degree robbery

but "was induced by others to participate." CP at 74-75 (quoting RCW 9.94A.535(a)). Barrington asked for an exceptional sentence of 12 months for the first degree robbery conviction, with an additional 60 months for the firearm enhancement.

## C. SENTENCING HEARING AND SENTENCE

At the sentencing hearing, the State filed certified copies of the prior out-of-state convictions with the sentencing court. Barrington's counsel stated that "the certified copies establish the prior convictions adequately," and the offender score of five points was accurate. 7 Verbatim Report of Proceedings (VRP) at 442. The State recommended a 117-month total sentence, the low end of the standard range sentence. Barrington's counsel reiterated the mitigating circumstances set forth in the motion for an exceptional sentence below the standard range and asked for an exceptional sentence downward of 72 months total. The State expressed that it was "open to the [sentencing c]ourt considering [an] exceptional sentence downward" "given the limited criminal history" and noted that considerations of "fairness . . . could allow for . . . an exceptional sentence." 7 VRP at 457-58.

In considering what sentence to impose, the sentencing court listened to the parties' arguments and noted Barrington's criminal history, the fact that he used "a sawed off shotgun with a pistol grip" at an apartment complex during the robbery, that Barrington "seem[ed] like a very decent guy," and that the court has "a duty to protect society." 7 VRP at 460-61. The sentencing court orally ruled on the motion for an exceptional sentence downward, stating,

> This Legislature has spoken. *I know I have some discretion here. I don't think it would be appropriate to exercise any lower than the standard range.* 57 months, plus 60 for the sentence enhancement for the weapon. . . .
> . . . .
> . . . 57 [months is] [t]he lowest range I can give him if I still follow the statute.

3

7 VRP at 461-62 (emphasis added).

The judgment and sentence included the two out-of-state felony convictions in Barrington's criminal history and set forth an offender score of 5. The sentencing court imposed a 57-month sentence at the low end of the standard range for the first degree robbery conviction, along with a 60-month sentence for the firearm enhancement, for a total standard range sentence of 117 months. This appeal followed.

ANALYSIS

I. COMPARABILITY OF THE OUT-OF-STATE CONVICTION

Barrington argues that the sentencing court erred when it scored his out-of-state conviction for grand larceny as a felony conviction for purposes of calculating his offender score.[1] Barrington contends that the sentencing court should have performed a comparability analysis of that offense to relevant Washington offenses and scored the out-of-state grand larceny conviction as a misdemeanor. Barrington waived the comparability issue.

Generally, a sentence within the standard range set forth in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, is not subject to appeal. *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). Additionally, a defendant who stipulates to his criminal history and offender score generally waives the right to challenge the facts to which he stipulated. *See State v. Harris*, 148 Wn. App. 22, 29, 197 P.3d 1206 (2008). "[W]aiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial

---

[1] Barrington concedes that the charging document for the out-of-state statutory *burglary* conviction shows that the sentencing court did not err when it included that conviction in his offender score.

court discretion." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). However, "waiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence." *Goodwin*, 146 Wn.2d at 874.

Out-of-state convictions can be included in a defendant's offender score only if they are comparable to a Washington offense.[2] *State v. Arndt*, 179 Wn. App. 373, 378, 320 P.3d 104 (2014). Whether an out-of-state conviction is comparable to a Washington offense generally involves a factual determination. *Arndt*, 179 Wn. App. at 378. Therefore, "a defendant who stipulates that his out-of-state conviction is equivalent to a Washington offense has waived a later challenge to the use of that conviction in calculating his offender score." *State v. Hickman*, 116 Wn. App. 902, 907, 68 P.3d 1156 (2003).

Barrington explicitly "stipulate[d] that any out-of-state convictions listed [were] equivalent to Washington State felony convictions of the class indicated, per RCW 9.94A.360(3)[ and RCW] 9.94A.525." CP at 81. The written stipulation listed Barrington's out-of-state class C felony conviction for grand larceny. Therefore, we hold that because Barrington stipulated that his out-of-state conviction is equivalent to a Washington offense, he has waived his challenge to the use of that conviction in calculating his offender score.

---

[2] The State concedes that Virginia's grand larceny offense is broader than Washington's definition of felony theft. Barrington simply states that a legal comparability analysis is "precluded." Br. of Appellant at 6. "[I]f the foreign statute is broader than the Washington definition of the particular crime, 'the sentencing court may look at the defendant's conduct . . . to determine whether the conduct would have violated the comparable Washington statute.'" *State v. Morely*, 134 Wn.2d 588, 606, 852 P.2d 167 (1998) (quoting *State v. Mutch*, 87 Wn. App. 433, 437, 942 P.2d 1018 (1997)).

II. EXCEPTIONAL SENTENCE BELOW THE STANDARD RANGE – MITIGATING CIRCUMSTANCES

Barrington argues that the sentencing court's ruling does not reflect whether it considered mitigating factors supporting an exceptional sentence below the standard range. Barrington contends that the mitigating factors include provocation by the victim and his limited criminal history. We disagree.

Generally, a sentencing court must impose a sentence within the standard range set by the SRA. RCW 9.94A.585(1); *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). However, RCW 9.94A.535(1) provides that a sentencing court may depart from the standard sentence range for substantial and compelling reasons and it may "impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." "While no defendant is entitled to an exceptional sentence below the standard range, every defendant *is* entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis added).

We review a sentencing court's decision to deny an exceptional sentence for abuse of discretion. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002). A court abuses its discretion when it denies an exceptional sentence based on an incorrect belief that it is not authorized to grant the sentence. *See State v. O'Dell*, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015). In contrast, where a trial court considers the facts of the case and concludes that there is no factual or legal basis to impose an exceptional downward sentence, it has exercised discretion, and the trial court's ruling is not appealable. *McGill*, 112 Wn. App. at 100.

Here, the sentencing court heard argument about and discussed the mitigating circumstances in Barrington's motion for an exceptional sentence at the sentencing hearing. The sentencing court explicitly recognized that it had "some discretion" in determining what sentence to impose. 7 VRP at 461. However, the sentencing court determined that it would not "be appropriate to exercise any lower than the standard range." 7 VRP at 461. The sentencing court then imposed "the lowest [standard] range" sentence it could give Barrington. 7 VRP at 462.

The sentencing court's acknowledgment that it had discretion to impose a sentence below the standard range shows that it did not deny Barrington's motion on a mistaken belief that it lacked authority to grant the motion. Instead, the sentencing court considered the mitigating circumstances, but denied Barrington's motion because it determined that an exceptional sentence downward was not appropriate. Because the sentencing court considered mitigating circumstances, we hold that it did not abuse its discretion in imposing a standard range sentence.

STATEMENT OF ADDITIONAL GROUNDS

FACTS

I. BACKGROUND

One night in May 2016, a little after midnight, René Ramirez Acosta looked outside his apartment's bedroom window and saw two people in his vehicle. Ramirez Acosta ran out of his apartment and screamed at the two people as they ran away. He saw a man that he later identified as Barrington sitting in a vehicle between 10 and 20 feet from his vehicle. Ramirez Acosta approached the vehicle and asked Barrington what he was doing. Barrington pointed a shotgun at Ramirez Acosta and told him to get back inside. The two people that had run off returned and pointed guns at Ramirez Acosta. Ramirez Acosta went inside the apartment. When Ramirez

Acosta went back outside, he saw that his stereo, speaker, and pictures of him and his girlfriend were missing from inside his vehicle.

After the police contacted Barrington, he admitted that he was with two people and that he pointed a shotgun into the air on the night in question and said, "'Get the f*** away from us.'" 3 VRP at 251.

The State charged Barrington with first degree robbery.

## II. TRIAL

At trial, the State called the following relevant witnesses: detectives, police officers, Ramirez Acosta, and Ramirez Acosta's girlfriend to testify. Exhibits admitted at trial included a shotgun, bullet, a shaved key, stolen property, and photo montages.

Ramirez Acosta testified to the above facts. He stated that on the night in question, he was sleeping when his girlfriend woke him up because his vehicle had a "kill switch" and she heard his vehicle turn on. 2 VRP at 137. Ramirez Acosta looked out of his bedroom window and saw two people in his vehicle. He testified that at this time his trunk was closed. He went outside and saw another vehicle about 10 feet from his vehicle. He screamed "Hey!" and the two people ran away. 2 VRP at 140. He then approached the person in the other vehicle who was in the passenger's seat and said, "Hey, what are you doing?" 2 VRP at 140. The person in the vehicle reached for a shotgun and pointed it at him and said, "[G]et back inside," as well as a lot of profanity. 2 VRP at 142. Ramirez Acosta said his girlfriend and father came outside around this time. He testified that the two other people then came back and pointed guns at him.

Ramirez Acosta, his girlfriend, and father went back inside. His girlfriend called the police. Ramirez Acosta testified that he went back outside about a minute and 30 seconds later and saw

that his stereo was missing, all the doors of the vehicle were open, and his trunk was open with the speaker missing. He also saw a bullet on the ground. An officer testified that there was a bullet and a shaved key on the ground when they arrived at the scene. Ramirez Acosta was shown exhibit 12, the shotgun, and he testified that this could have been the same shotgun that the man in the vehicle pointed at him. Ramirez Acosta also testified that he picked Barrington's picture in a photo montage and said that he was 90 percent certain he was the one inside the vehicle that pointed the gun at him. Ramirez Acosta identified Barrington at trial.

Detective Robert Baker testified that he interviewed Barrington as part of his investigation and Barrington told him that he and two other people drove to Tacoma to get drugs and had stopped at a Tacoma apartment complex. Barrington told Detective Baker that he was approached when he was in the vehicle. The detective testified that Barrington told him that he pointed a shotgun in the air and said, "Get the f*** away from us." 2 VRP at 109. Detective Baker said that Barrington told him that "they returned to the vehicle" and "they all fled the area." 3 VRP at 252. Detective Timothy Griffith was with Detective Baker during this interview and both detectives said that Barrington told them that following this incident, Barrington and the two other people went to Federal Way and that they were in a gold Acura.

Police officers testified that Federal Way Police had found a gold Acura the same day as the incident, and the officers brought it to a holding facility at the Tacoma Police Department. After the vehicle was brought to a holding facility, the officers and Detective Baker testified that they found a shotgun, stereo, and speaker box inside the vehicle. At trial, Ramirez Acosta identified the stereo and speaker as his.

9

Barrington did not testify or call witnesses at trial. A jury found Barrington guilty of first degree robbery and a firearm enhancement.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

In his SAG, Barrington argues that the State presented insufficient evidence to prove beyond a reasonable doubt that he committed first degree robbery. Barrington's argument fails.

### A. PRINCIPLES OF LAW

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State has the burden of proving all of the essential elements of the crime "beyond a reasonable doubt." *Rich*, 184 Wn.2d at 903. Evidence is sufficient if, when viewed "'in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [were proven] *beyond* a reasonable doubt.'" *Rich*, 184 Wn.2d at 903 (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). When challenging the evidence as insufficient, the defendant "admits the truth of all of the State's evidence" and all "reasonable inferences" that arise therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017). "Circumstantial and direct evidence are . . . equally reliable." *Cardenas-Flores*, 189 Wn.2d at 266.

A person commits robbery when he

unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of

the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190. Division One of this court has held that a taking is from a victim's person or presence when the victim "'by force or fear, had been removed from or prevented from approaching the place from which the asportation of the personality occurred.'" *State v. Stearns*, 61 Wn. App. 224, 229, 810 P.2d 41 (1991) (quoting *State v. Blewitt*, 37 Wn. App. 397, 398-99, 680 P.2d 457 (1984)); *see also State v. Nam*, 136 Wn. App. 698, 705, 150 P.3d 617 (2007) (holding that "[p]ersonal property is within a victim's presence when it is 'within [the victim's] reach, inspection, observation or control, that [she] could, if not overcome with violence or prevented by fear, retain [her] possession of it'") (alterations in original) (quoting *State v. Manchester*, 57 Wn. App. 765, 768-69, 790 P.2d 217 (1990)).

Under RCW 9A.56.200(1), a person is guilty of first degree robbery if he is armed with a deadly weapon, displays what appears to be a firearm or other deadly weapon, or inflicts bodily injury.

The State relied on a theory of accomplice liability. A person may be guilty of the crime as an accomplice if he "[s]olicits, commands, encourages, or requests" another person to commit a crime or "[a]ids or agrees to aid such person in planning or committing it" with knowledge that he is promoting or facilitating the commission of the crime. RCW 9A.08.020(2)(a)(i), (ii). "General knowledge of 'the crime' is sufficient." *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000). In order to establish that a person is an accomplice, the State must prove more than mere presence and knowledge of the criminal activity of another. *State v. Everybodytalksabout*, 145 Wn.2d 456, 472, 39 P.3d 294 (2002). But the State does not need to prove "'that the principal and accomplice share the same mental state.'" *State v. McDaniel*, 155 Wn. App. 829, 864, 230

11

P.3d 245 (2010) (internal quotation marks omitted) (quoting *State v. Hoffman*, 116 Wn.2d 51, 104, 804 P.2d 577 (1991)).

### B.  SUFFICIENT EVIDENCE OF FIRST DEGREE ROBBERY

Barrington argues that there is insufficient evidence that he committed first degree robbery or acted as an accomplice to first degree robbery.  This argument fails.

First, Barrington specifically argues that based on the victim testimony, he was not connected to the robbery, he did not know about the robbery, and he did not help the two others because he "was not near or around the alleged robbery and was never involved in [the] altercation but was approached by the victims" and pointed the gun at the victim to protect himself.  SAG at 2.

Here, Ramirez Acosta saw two people inside his vehicle, but the trunk of his vehicle was closed.  He went outside and when he confronted the two individuals inside his car, they ran away.  Barrington sat in the passenger's side of a vehicle between 10 and 20 feet away from Ramirez Acosta's vehicle.  Ramirez Acosta approached Barrington sitting in the vehicle and confronted him by saying, "[W]hat are you doing?"  2 VRP at 140.  Barrington then pointed a shotgun at him and told Ramirez Acosta to get back inside.  The State presented evidence that the two people that Ramirez Acosta initially saw in his vehicle came back and pointed guns at Ramirez Acosta.  Ramirez Acosta then went back inside.

His girlfriend called the police and about a minute and a half later Ramirez Acosta went back outside and he noticed his stereo, speakers, and photos were gone and the trunk of his vehicle was open.  Additionally, a bullet and shaved key were found on the scene.  This evidence is supported by the detectives' testimony that Barrington told the detectives that he went to the

apartments in Tacoma with two others, that he was approached when he was in a vehicle, and that he pointed a shotgun in the air and said, "Get the f*** away from us." 2 VRP at 109. Furthermore, Barrington told the detectives that he and the two others were in a gold Acura, and later officers found a gold Acura with a shotgun, stereo, and speakers inside of it. At trial, Ramirez Acosta identified the stereo and speaker as his.

This evidence leads to reasonable inferences that Barrington had knowledge that the two others were stealing from Ramirez Acosta's car and that Barrington assisted in the robbery by forcing Ramirez Acosta to retreat to his apartment so that the others could continue robbing the victim's vehicle. This happened in the presence of the victim because the victim was prevented from protecting his property due to force. *Stearns*, 61 Wn. App. at 229. Furthermore, credibility determinations and persuasiveness of the evidence are issues decided by the jury and not this court. *Cardenas-Flores*, 189 Wn.2d at 266. Additionally, we review "the evidence in the light most favorable to the [State]." *Rich*, 184 Wn.2d at 903. Thus, Barrington's argument that he was not connected to the robbery and did not know about the robbery fails.

Second, Barrington also argues that intent is a necessary element of robbery and that the testimony shows that Barrington did not have the requisite intent. The crime of robbery "includes the nonstatutory element of specific intent to steal, which . . . is the equivalent to specific intent to deprive the victim of his or her property permanently." *State v. Ralph*, 175 Wn. App. 814, 82-25, 308 P.3d 729 (2013). However, for accomplice liability a person just needs "[g]eneral knowledge of 'the crime'" and does not need "knowledge of each element of the principal's crime." *Roberts*, 142 Wn.2d at 513. Based on the circumstantial evidence that the State presented at trial as summarized above, Barrington aided the two others with knowledge that his actions facilitated the

crime of robbery. A reasonable trier of fact could also infer from the evidence that Barrington acted as a principal and threatened Ramirez Acosta by pointing his gun at Ramirez Acosta with the intent to deprive Ramirez Acosta of his property.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Barrington was either an accomplice or principal in taking personal property in the presence of another against that person's will by the threatened use of immediate force and while displaying and armed with a deadly weapon. Therefore, Barrington's claim that insufficient evidence supports his first degree robbery conviction fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.