[No. 4217-43729-1.   Division One.   January 10, 1977.]

THE PORT OF SEATTLE, *Respondent*, v. SEVERINO D. RIO, *Appellant*.

Richard D. Harris, Short, Cressman & Cable, Douglas R. Hartwich, and Margaret A. Evans, for appellant.

Bogle & Gates, Jay H. Zulauf, Kimberly W. Osenbaugh, Arthur C. Claflin, Rutherford, Kargianis & Austin, and Russell A. Austin, Jr., for respondent.

CALLOW, J.—The condemnee, Severino D. Rio, appeals from a judgment entered pursuant to RCW 8.25.070 denying him an award for attorney fees incurred in a condemnation action initiated by the condemnor, Port of Seattle.

In 1971, the Port of Seattle initiated condemnation proceedings to acquire Rio's property for the continued development of the Seattle-Tacoma International Airport. An order of adjudication of public use and necessity was entered June 2, 1971, and on July 20, 1971, the condemnee stipulated to the entry of an order of immediate possession. On August 20, 1971, the Port filed a statement of offer for the condemnee's property in the amount of $60,000. A second statement of offer for the property was filed on April 7, 1972, in the amount of $65,000.

On October 17, 1972, the Port filed a third statement of offer for the condemnee's property in the amount of $85,000. Thereafter, on June 19, 1973, pursuant to the Port's request for immediate use and possession and the payment into court by the Port of its $85,000 offer, the condemnee signed the Port's immediate use and possession stipulation. Of this amount, $45,000 was distributed to the condemnee at that time, and $40,000 was retained in the registry of the court.

On August 9, 1973, the Port filed its fourth statement of offer in the amount of $95,000. This offer of $95,000 for the property had been approved by a unanimous vote of the Port Commission in an executive session. No written resolution or ratification of the $95,000 settlement offer was recorded in any book as a public record. The condemnee rejected this final written settlement offer, and 15 months

later the matter proceeded to the third trial on valuation, two previous trials having ended in mistrials. At the third trial, the condemnee presented appraisal witnesses who testified there was a reasonable probability that the property would be rezoned to an industrial category and placed the fair market value of the property between $185,000 and $195,000. The trial culminated with a jury verdict of $102,000 in favor of the condemnee.

On January 7, 1975, the condemnee's petition for reimbursement of fees and related costs pursuant to RCW 8.25.070 was denied on the ground that the condemnee's jury award of $102,000 did not exceed the Port's $95,000 offer by more than 10 percent. Judgment was entered awarding the condemnee $102,000, and denying the petition for attorney and expert witness fees.

The issues involve (1) whether RCW 8.25.070 requires (a) that the amount offered and paid into court for immediate use and possession or (b) that the amount of the last offer, made 30 days before trial, be the amount to which to apply the formula for qualification for attorney fees under the statute; and (2) whether the $95,000 written offer of settlement was properly authorized by the Port Commission or was invalid.

## I. What Is The "Highest Written Offer In Settlement" Under RCW 8.25.070?

The intent of RCW 8.25.070[1] is to avoid litigation in emi-

---

[1] RCW 8.25.070 states:

"(1) Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

"(a) If condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or

"(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor at least thirty days prior to commencement of said trial.

"(2) The attorney general or other attorney representing a condemnor in effecting a settlement of an eminent domain proceeding may

nent domain proceedings when possible by encouraging settlement before trial. Settlements often come about only when both sides are goaded to that end, and so under the statute condemnees are awarded attorney fees only if the terms of the statute are met and condemnors must make a reasonable written settlement offer at least 30 days prior to the commencement of the trial to avoid the payment of fees. The settlement offer made by a condemnor will be deemed unreasonable only if the award made at the trial by the trier of the fact "exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor at least thirty days prior to commencement of said trial."

The legislature also placed an obligation on the condemnee to seriously consider the written offer, for if such

---

allow to the condemnee reasonable attorney fees.

"(3) Reasonable attorney fees and reasonable expert witness fees authorized by this section shall be awarded only if the condemnee stipulates, if requested to do so in writing by the condemnor, to an order of immediate possession and use of the property being condemned within thirty days after receipt of the written request, or within fifteen days after the entry of an order adjudicating public use whichever is later and thereafter delivers possession of the property to the condemnor upon the deposit in court of a warrant sufficient to pay the amount offered as provided by law. In the event, however, the condemnor does not request the condemnee to stipulate to an order of immediate possession and use prior to trial, the condemnee shall be entitled to an award of reasonable attorney fees and reasonable expert witness fees as authorized by subsections (1) and (2) of this section.

"(4) Reasonable attorney fees as authorized in this section shall not exceed the general trial rate, per day for actual trial time and the general hourly rate for preparation as provided in the minimum bar fee schedule of the county or judicial district in which the proceeding was instituted, or if no minimum bar fee schedule has been adopted in the county, then the trial and hourly rates as provided in the minimum bar fee schedule customarily used in such county. Not later than July 1, 1971 the administrator for the courts shall adopt a rule establishing standards for verifying fees authorized by this section. Reasonable expert witness fees as authorized in this section shall not exceed the customary rates obtaining in the county by the hour for investigation and research and by the day or half day for trial attendance.

"(5) In no event may any offer in settlement be referred to or used during the trial for any purpose in determining the amount of compensation to be paid for the property."

offer is delineated as reasonable under the statute by the subsequent judgment resulting in an award that does not exceed the written offer of settlement by more than 10 percent, the condemnee is denied attorney fees. In the event the condemnor has requested in writing that the condemnee stipulate to an order of immediate possession, the condemnee has an additional obligation in order to qualify for an award of attorney fees. In such a situation, an award of attorney fees to the condemnee is authorized only if the condemnee stipulates to immediate possession and use of the property within certain time periods and thereafter delivers possession to the condemnor upon deposit in court of enough to pay the amount offered. We read this provision of the statute as placing an additional requirement upon the condemnee in order to qualify for attorney fees if the situation involves a request for immediate use and possession by the condemnor. We do not read that portion of the statute (RCW 8.25.070(3)) as making the amount offered for immediate use and possession the "highest written offer" that can be made. The statute does not lock one figure to the other.

The argument that the $85,000 written settlement offer of October 17, 1972, which was subsequently paid into the court in satisfaction of subsection (3) of RCW 8.25.070, was a proper figure upon which to base the subsection (1)(b) 10 percent computation would write into the conditions of the statute terms that are not there. The statute does not state that the 10 percent computation shall be based upon the amount paid into court where immediate possession is requested and granted, but states instead that such computation shall be based upon the "highest written offer in settlement" submitted "by condemnor at least thirty days prior to commencement of said trial." The statute recognizes that there may be a substantial span of time between the time that use and possession is surrendered and the time of trial. Were the statute to be read as proposed by the condemnee, the possibility of settlement would be substantially reduced and the inducement to make an in-

creased settlement offer would be cut off when payment was made into court to secure use and possession. This result would be inimical to the purpose of the statute. We interpret the statute as stating the intent of the legislature to permit condemnors to make offers which will induce settlement up to 30 days before trial without regard to the collateral problem of use and possession. *Renton v. Dillingham Corp.*, 79 Wn.2d 374, 485 P.2d 613, 58 A.L.R.3d 196 (1971).

## II. VALIDITY OF THE $95,000 OFFER

The condemnee contends that the $95,000 written settlement offer was unauthorized and invalid due to (1) the failure of the Port to comply with its own resolutions 2425 and 2520, (2) the failure to have the offer approved in a meeting open to the public pursuant to RCW 42.30, and (3) the failure to have the terms of the settlement offer recorded in the public record in accordance with RCW 53.12.245.

The Port had adopted resolutions 2425 and 2520, which required that "further specific Commission authorization" be obtained if the total price offered for acquisition of condemned property exceeded the Port's appraisal by 10 percent. These requirements were satisfied when the Port Commission held an executive session at which the commissioners unanimously voted and authorized the $95,000 written settlement offer. We find neither a challenge to the truth of the affidavit filed which establishes that such a vote was taken, nor to the fact that a written offer in settlement was thereafter made to the condemnee in August 1973, more than a year before the case went to trial in November 1974. The Port complied with the terms of its own resolutions.

The Open Public Meetings Act of 1971 requires openness in the deliberations of public agencies whenever it will "aid in the conduct of the people's business." RCW 42.30.010. However, not all issues need be discussed in

public.[2] *Cf. South Maple St. Ass'n v. Board of Adjustment,* 194 Neb. 118, 230 N.W.2d 471 (1975); 21 A.L.R. Fed. 224 (1974). While exceptions to right-to-know legislative provisions are to be strictly construed, the right of a public agency privately to consult legal counsel on the settlement or avoidance of litigation is an activity properly excepted from the right-to-know acts. A public agency should neither be given an advantage, nor placed at a disadvantage in litigation. *Sacramento Newspaper Guild v . Sacramento County Bd. of Supervisors,* 263 Cal. App. 2d 41, 69 Cal. Rptr. 480 (1968); *Illinois News Broadcasters Ass'n v. Springfield,* 22 Ill. App. 3d 226, 317 N.E.2d 288 (1974); *News & Observer Publishing Co. v. Interim Bd. of Educ.,* 29 N.C. App. 37, 223 S.E.2d 580 (1976).

We recognize that public agencies are entitled to effective legal representation to guarantee the viability of their programs, and that to obtain effective advice the protection of the attorney-client privilege on matters pertaining to the acquisition of real property under the power of condemnation is essential. RCW 42.30.110 has foreseen this eventuality and made provision for it. The protection of the confidentiality of the attorney-client relationship is needed to preserve the negotiating power of a public agency condemnor at the bargaining table. *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors, supra,* stated at page 56:

> Settlement and avoidance of litigation are particularly sensitive activities, whose conduct would be grossly confounded, often made impossible, by undiscriminating in-

[2] RCW 42.30.110 provides in part:

"Executive sessions. Nothing contained in this chapter shall be construed to prevent a governing body from holding executive sessions during a regular or special meeting to *consider matters affecting* national security; the selection of a site or *the acquisition of real estate by lease or purchase, when publicity regarding such consideration would cause a likelihood of increased price;* . . ." (Italics ours.)

RCW 42.32.030 provides:

"Minutes. The minutes of all regular and special meetings *except executive sessions* of such boards, commissions, agencies or authorities shall be promptly recorded and such records shall be open to public inspection." (Italics ours.)

sistence on open lawyer-client conferences. In settlement advice, the attorney's professional task is to provide his client a frank appraisal of strength and weakness, gains and risks, hopes and fears. If the public's "right to know" compelled admission of an audience, the ringside seats would be occupied by the government's adversary, delighted to capitalize on every revelation of weakness. . . . Frustration would blunt the law's policy in favor of settlement, and financial imprudence might be a compelled path.

(Footnote omitted.)

The open meeting law and the attorney-client privilege may coexist. *Times Publishing Co. v. Williams,* 222 So. 2d 470 (Fla. Dist. Ct. App. 1969). A communication between the attorney and his public agency client must pass a 4-step test to qualify as an exception to the right-to-know statutes:

(1) The communication must originate in a confidence that it will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained . . .

*State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 710, 165 A.L.R. 1295 (1946). When a communication is confidential and concerns contemplated or pending litigation or settlement offers, the necessity for the attorney-client privilege exists as between a public agency and its lawyers to as great an extent as it exists between other clients and their counsel. *People ex rel. Hopf v. Barger,* 30 Ill. App. 3d 525, 332 N.E.2d 649 (1975). We hold the instant case is an appropriate use of this exception to the Open Public Meetings Act of 1971. RCW 42.30.010-.920.

The last issue presented is whether it was requisite to the validity of the written settlement offer of $95,000 that it be recorded in a public record in accordance with

RCW 53.12.245.[3] The right to hold an executive session when the issue to come before the commission is the acquisition of real property is established by RCW 42.30.110. Since the subject matter was proper for consideration in an executive session, the omission of the minutes of the session from a public record was correct. RCW 42.32.030.[4] There was no prerequisite to the validity of the $95,000 offer that the minutes of the executive session authorizing such an offer be made a part of the minutes of the commission's meeting which are kept pursuant to RCW 53.12.245. The specific provisions of RCW 42.30.110 and 42.32.030 control the particular situation at hand, rather than the general provisions of RCW 53.12.245. *Mercer Island v. Walker*, 76 Wn.2d 607, 458 P.2d 274 (1969).

The judgment of the trial court is affirmed.

SWANSON and ANDERSEN, JJ., concur.

---

[3]RCW 53.12.245 provides:

"Organization of commission—Powers and duties—Record of proceedings. The port commission shall organize by the election of its own members of a president and secretary, shall by resolution adopt rules governing the transaction of its business and shall adopt an official seal. All proceedings of the port commission shall be by motion or resolution recorded in a book or books kept for such purpose, which shall be public records."

[4]See footnote 2, *supra*.