
FILED
COURT OF APPEALS
STATE OF WASHINGTON

2015 JAN 26 AM 9: 25

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a regional transit authority, dba SOUND TRANSIT,<br><br>Respondent,<br><br>v.<br><br>AIRPORT INVESTMENT COMPANY, a Washington corporation, dba Hampton Inn,<br><br>Appellant,<br><br>HORIZON AIR INDUSTRIES, INC., a Washington corporation; IBEW 77 INTERNATIONAL BOULEVARD, LLC, a Washington limited liability company; JPMORGAN CHASE BANK, N.C., fka The Chase Manhattan Bank, as Trustee for the Registered Holders of Prudential Securities Financing Corporation Commercial Mortgage Pass-Through Certificates, Series 199-C2; KING COUNTY; and ALL UNKNOWN OWNERS and UNKNOWN TENANTS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 70958-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: January 26, 2015 |

APPELWICK, J. — A jury awarded AIC $225,000 in just compensation for Sound Transit's condemnation of easements across the company's Hampton Inn property. AIC argues that the trial court abused its discretion when it excluded evidence of damages

based on Hampton Inn's franchise requirements and business practices. AIC claims the trial court abused its discretion when it connected the admissibility of one of AIC's earlier appraisals with the admissibility of an earlier Sound Transit appraisal. It contends the trial court abused its discretion by admitting testimony from the company's president that was based on an appraiser's out-of-court valuation. It argues that it is entitled to an award of attorney fees under either RCW 8.25.070(1)(a) or RCW 8.25.075(1)(b). We affirm.

## FACTS

Airport Investment Company (AIC) owns property just south of SeaTac Airport. The property consists of approximately 112,626 square feet of land area and is developed with a four story, 130 room hotel. AIC operates the hotel under a Hampton Inn franchise. On July 28, 2011, Sound Transit decided to acquire a permanent guideway easement and a temporary construction easement (TCE) over the AIC property. The permanent guideway easement is to provide for the operation of an elevated light rail line along the property's western boundary. Sound Transit also sought a three year TCE to enable it time to construct the guideway. In November 2012, AIC stipulated to Sound Transit's early possession and use of the easements. In exchange, Sound Transit made a deposit with the clerk of the court. The parties subsequently exchanged valuations by their respective appraisers, but could not agree on a value for the takings and proceeded to trial.

After the jury trial, the jury awarded AIC $225,000 in just compensation—$163,497 for the permanent easement and $61,503 for the TCE. The trial court denied AIC's request for attorney fees and expenses.

2

AIC appeals and seeks reversal, because it claims it was denied appropriate just compensation. It contends that there were prejudicial evidentiary errors at trial that denied it just compensation for the taking. AIC also contends that it is entitled to attorney fees below and on appeal, because either RCW 8.25.075(1)(b) or RCW 8.25.070(1)(a) provide for a fee award.

## DISCUSSION

### I. Hampton Inn's Franchise Requirements and Business Practices

AIC claims that the trial court erred when it prevented AIC's appraiser, Scott Biethan, from supporting his opinion with references to the Hampton Inn franchise agreement and related business practices. It contends that the evidence is relevant and therefore admissible under the well-accepted income method of appraisal.

At trial, the parties' testifying appraisers presented two very disparate just compensation values. Both appraisers utilized the income method of appraisal and the sales comparison method in reaching their appraisal values.[1] Sound Transit's appraisal expert, Murray Brackett, testified that the permanent easement was worth $113,169, the TCE was worth $61,503, and that there were no severance damages. Severance damages are the amount by which the permanent easement damages the property remainder. In contrast, AIC's testifying expert, Biethan, testified that the permanent easement was valued at $210,000 and the TCE was worth $32,124. But, unlike Brackett, Biethan also included $1,457,000 in his appraisal representing severance damages. Consequently, Biethan testified that $1,699,124 in just compensation was appropriate.

---

[1] Murray Brackett, Sound Transit's appraiser, also utilized a cost method.

Biethan's original appraisal was even higher as to severance damages. The appraisal was based, in part, on certain franchise requirements and business practices imposed on AIC's hotel operations by the Hampton Inn franchise agreement. In light of Biethan's appraisal calculation methods, Sound Transit filed a motion in limine to exclude any evidence of franchise operation requirements and business practices currently imposed on AIC's property. It argued that the evidence should be excluded, because business losses and consequential damages are not compensable in eminent domain actions.

AIC responded that evidence of the franchise agreements was relevant, because Sound Transit's construction activities would essentially put AIC in breach of its franchise agreement. The franchise agreement requires AIC to provide one parking space per room. AIC argued that Sound Transit's construction would limit the amount of parking spaces available, rendering it unable to comply with the franchise parking requirement. AIC claimed that it would be forced to use valet services during construction to help mitigate the parking issue and that evidence of this mitigation should be admitted. Further, it claimed that both the temporary and permanent easements would result in a loss of property value, because the hotel would be forced to honor its 100 percent money back guaranty more often due to the construction. AIC claimed that it was not introducing the evidence to seek lost profits or consequential damages, but to show that the property's value would decrease. The trial court granted Sound Transit's motion in limine.

On appeal AIC renews this argument and contends that the trial court's ruling prevented Biethan from adequately supporting and explaining his opinion that AIC would suffer a great loss for diminution to the remainder of the property after the taking. It

4

contends that the evidence is relevant and therefore admissible under the well-accepted income method of appraisal.[2]

This court reviews relevance issues for abuse of discretion. City of Bellevue v. Kravik, 69 Wn. App. 735, 741, 850 P.2d 559 (1993). A trial court abuses its discretion only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. Gorman v. Pierce County, 176 Wn. App. 63, 84, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 495 (2014).

AIC cites to cases that it claims endorse the income approach of appraisal.[3] But, whether the income approach is an admissible method of appraisal is not at issue. Both appraisers were allowed to testify to value under the income approach. Acceptance of the income approach to appraisal does not mean that there are no limitations in a condemnation proceeding on that approach or on what is properly recoverable. The issue is whether the trial court properly excluded consideration of AIC's franchise specific damage claims.

It is well established law in Washington that an eminent domain award must relate to the property's market value, not the business conducted there. See Seattle & Mont. R.R. v. Roeder, 30 Wash. 244, 264, 70 P. 498 (1902). It is the property of the condemnee, not the business, which is condemned. See Chicago, Milwaukee & Puget Sound R.R. v.

---

[2] Sound Transit contends that AIC failed to preserve this issue for appeal, because it did not present an offer of proof showing how the evidence was relevant to property value as opposed to noncompensable business losses or other consequential damages. But, this is effectively the issue at the heart of the appeal—whether the trial court abused its discretion by excluding AIC's evidence, which AIC contends is both relevant to the property value appraisal and legally admissible. As such, we reach the merits of AIC's argument.

[3] State v. Obie Outdoor Adver., 9 Wn. App. 943, 946-47, 516 P.2d 233 (1973); Tiger Oil Corp. v. Yakima County, 158 Wn. App. 553, 563, 242 P.3d 936 (2010).

True, 62 Wash. 646, 650, 114 P. 515 (1911). Damages cannot be allowed for the loss of profits of a business maintained on the property. Renton v. Scott Pac. Terminal, 9 Wn. App. 364, 368-69, 512 P.2d 1137 (1973). Just compensation should reflect the land's objective value and its lesser desirability to a willing buyer, not its desirability to a specific owner. See Martin v. Port of Seattle, 64 Wn.2d 309, 319, 391 P.2d 540 (1964). Further, Washington cases establish that consequential damages, including lost profits, are not available in eminent domain proceedings. See City of Tacoma v. Nisqually Power Co., 57 Wash. 420, 434, 107 P. 199 (1910); True, 62 Wash. at 650 (1911); Fix v. City of Tacoma, 171 Wash. 196, 200, 17 P.2d 599 (1933).

Biethan's original appraisal accounted for specialized Hampton Inn franchise requirements and business practices that gave rise to franchise specific damages to AIC. This claim is clearly one of damage to the specific business operating on the property, not to the property itself. These damages would not apply to every buyer seeking to purchase or rent the hotel property at fair market value. Only those buying the franchise with the property would be constrained by those same restrictions.[4] The case law excludes recovery of these damages.

The trial court did not abuse its discretion in finding the proposed evidence irrelevant and inadmissible.

---

[4] AIC argues that because Sound Transit's appraiser accounted for the fact that the hotel property is suitable for maintaining a national brand means that Hampton Inn-specific practices should be admitted into evidence also. But, not every potential buyer on the market, even one interested in acquiring a hotel property suitable to support a national brand, is seeking to acquire a Hampton Inn. Evidence that a hotel property is generally of franchise quality is different from evidence that a Hampton Inn business would stand to lose income because of constraining franchise requirements.

II.   Earlier Appraisals

In May 2012, Sound Transit sent AIC a valuation offer of $142,300 for the easements based on an initial appraisal by its appraiser. Sound Transit stated that AIC had the right to obtain its own appraisal at Sound Transit's expense. Consequently, AIC hired Patrick Lamb to provide an appraisal. Lamb valued the easements at $485,000. AIC submitted the Lamb appraisal to Sound Transit in July 2012 with a letter expressing its strong belief that it was entitled to $485,000.

On January 2, 2013, AIC told Sound Transit that it would be hiring another appraiser. AIC hired Biethan as its new appraiser. Biethan appraised the permanent easement at $210,000. He also concluded that the permanent easement would damage the remainder of the property by $1.6 million.[5]

Sound Transit's appraiser, Brackett, then updated his original appraisal in May 2013. He valued the permanent easement at $113,169 and the TCE at $68,657.

Sound Transit made a 30 day offer for the easements on June 14, 2013. Sound Transit's 30 day offer was marked "For Settlement Purposes Only." Sound Transit offered AIC $463,500 for both the permanent easement and the TCE. Sound Transit's offer remained open until July 17, 2013, the first day of trial. AIC did not accept Sound Transit's settlement offer, and the valuation case proceeded to trial.

Prior to trial, AIC filed a motion in limine requesting that evidence of AIC's initial Lamb appraisal be excluded from trial as work product produced by a consulting expert and as evidence related to settlement discussions. Sound Transit argued that Lamb's

---

[5] At trial, Biethan testified that the permanent easement damaged the property remainder by $1,457,000.

initial appraisal was not protected as a settlement offer, because it was not labeled as such. Alternatively, it argued that if the trial court construed Lamb's appraisal as a part of a settlement offer, then Sound Transit's (Brackett's) first appraisal should also be excluded under the same rationale.

The trial court found that it was not convinced from the record that it had a sufficient showing for either the work product privilege or the settlement privilege to apply to Lamb's appraisal. It said that it was not convinced either applied, because they were both waived when AIC sent Sound Transit Lamb's appraisal without delineating it as "for settlement purposes only." But, it declined to make a final determination regarding either privilege. The trial court finally concluded, "So I'm going to let you folks figure out if you want to get into this history. If one of you does, the other one can. All right? I'm going to do a tradeoff here." The court further opined that it preferred neither side address the earlier appraisals as they are unimportant and confusing for the jury to consider.

On appeal, AIC argues that the trial court erred when it did not unequivocally grant its motion in limine to exclude Lamb's out-of-court valuation independent of Sound Transit's earlier appraisal. It claims that the two positions could not be equated—Sound Transit's appraiser would testify at trial and AIC's would not. AIC argues that it should have been able to impeach Brackett without the threat that its initial appraisal would also be admitted.

The trial court's ruling on a pretrial motion to exclude evidence is within the discretion of the trial court, and is reviewed for abuse of discretion. See Gammon v. Clark Equip. Co., 38 Wn. App. 274, 286, 686 P.2d 1102 (1984), aff'd, 104 Wn.2d 613, 707 P.2d 685 (1985).

8

The two appraisals were communicated around the same point in time (May 2012 and July 2012) and both were communicated in advance of any litigation. Neither of the initial appraisals were labeled as settlement communications on their faces. Whether the initial appraiser was a consulting or testifying expert has no bearing on whether the earlier appraisals were settlement offers when communicated. It was not an abuse of discretion for the trial court to equate them and reserve judgment as to whether they were in fact protected settlement offers.[6]

Even if it had been error, it was clearly harmless. AIC wanted to impeach Brackett without Lamb's appraisal being admitted into evidence. AIC was afforded the opportunity to cross-examine and impeach Brackett regarding his earlier appraisal and it seized that opportunity. And, Lamb did not testify nor was his appraisal admitted. This was AIC's desired outcome when it moved to exclude Lamb's earlier appraisal. The value Lamb provided came in through AIC's president, Sandra Oh, as a result of a separate evidentiary ruling. Even if the trial court had explicitly granted AIC's motion in limine, that ruling would not have precluded the trial court's ruling admitting Oh's testimony. Any prejudice from the admission of Lamb's appraisal value turns on the correctness of the trial court ruling about Oh's testimony, not on the ruling on AIC's motion in limine.

---

[6] On appeal, AIC argues that it was an abuse of discretion for the trial court to deny its motion in limine because it was "unopposed." In response to AIC's motions in limine below, Sound Transit said that it agreed generally to the exclusion but that it wished to present some caveats and clarifications in light of AIC's arguments about the issues. Sound Transit argued that Lamb's appraisal was not a settlement offer and that if it was, Brackett's earlier appraisal was too. The trial court did not abuse its discretion in treating AIC's motion in limine as an opposed motion. Further, AIC provides no support for its assertion that a trial court abuses its discretion when it does not grant an unopposed motion. RAP 10.3(a)(6); In re Marriage of Fahey, 164 Wn. App. 42, 59, 262 P.3d 128 (2011) (an appellate court does not address arguments that are not supported by cited authorities).

9

III. Sandra Oh's Testimony

AIC contends that the trial court erred when it required Oh to provide testimony about her belief of the value of the property that was based on Lamb's out-of-court valuation opinion. AIC claims that Oh's statements were hearsay, because they were based on Lamb's out-of court valuation. Alternatively, AIC contends that Oh's testimony should have been excluded, because the valuation opinion of an owner is not admissible when it is based entirely on an expert's valuation.

Sound Transit called Oh as a witness. With the jury excused, the parties discussed the admissibility of Oh's testimony regarding her belief of the property value. The court questioned Oh:

> THE COURT: Was there a belief that you were entitled to $485,000 for just compensation?
>
> MS. OH: Whatever was in the appraisal and what the appraiser came up with with --
>
> THE COURT: Is that an accurate statement, Ms. Oh? Did you believe you're entitled to $485,000? When you said it in July, was that an accurate statement about what your belief was?
>
> MS. OH: My belief was whatever the appraiser said was --
>
> THE COURT: Yes. Focus on the letter and the date and tell me if this was your belief.
>
> MS. OH: Well, that was my belief from the information from the appraiser.
>
> . . . .
>
> THE COURT: . . . I do think it's clear that this is a statement of something that she believed at the time and [Sound Transit] can bring it in as her party admission.

10

AIC then objected, contending that Oh's belief testimony would not satisfy the party admission hearsay exception. The court responded that Oh's belief was not hearsay.

Oh then testified in front of the jury. Counsel for Sound Transit asked Oh, "And as of July 16, 2012, was it Airport Investment Company's and your belief, strong belief, that Airport Investment Company was entitled to a total of $485,000 for just compensation." Oh responded that she, "based compensation on whatever the appraiser said." When pressed to answer either "yes" or "no" to Sound Transit's question, Oh responded, "Yes."

This court reviews the correct interpretation of an evidentiary rule de novo as a question of law. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Once the rule is correctly interpreted, the trial court's decision to admit or exclude the evidence is reviewed for an abuse of discretion. Id. As such, whether Oh's testimony is hearsay or inadmissible opinion testimony is first subject to de novo review.

The trial court ruled that Oh's belief of value was not hearsay and was admissible as a party admission. It authorized Oh to testify as to her belief of value. An admission by a party opponent is not hearsay. ER 801(d)(2); Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 859, 292 P.3d 779 (2013). An admission qualifies as an admission by a party opponent if the statement is offered against a party and is (i) the party's own statement, (ii) a statement of which the party has manifested an adoption or belief in its truth, or (iii) a person authorized by the party to make a statement concerning the subject, or (iv) a statement by the party's agent acting within the scope of authority to make the statement for the party. ER 801(d)(2).

Here, Oh's statement regarding her belief of the property's value was clearly offered against AIC as a method of undercutting a larger appraisal that was admitted at

trial. There was no dispute below that as president, Oh is a principal authorized to make a statement concerning AIC's beliefs. In voir dire, Oh admitted to adopting the belief of the $485,000 value that AIC sent to Sound Transit via letter on July 16, 2012. Oh then repeated in trial that she believed the property was worth $485,000. Oh's belief of value falls within the definition of a party admission under ER 801(d)(2) and is therefore not hearsay. The trial court did not abuse its discretion.

Still, AIC argues that Oh's testimony went beyond the scope of ER 801(d)(2)'s exclusion. Even if ER 801(d)(2) did not apply, the testimony that the trial court authorized—Oh's belief of the property value—is simply not hearsay by definition. Hearsay is an out-of-court statement made to prove the truth of the matter asserted. ER 801(c); In re Det. of Law, 146 Wn. App. 28, 38, 204 P.3d 230 (2008). Oh's belief of value is quite simply not an out-of-court statement.[7] The trial court did not abuse its discretion in admitting Oh's belief testimony as nonhearsay.

When Oh referred to Lamb's appraisal while testifying and communicated an out-of-court statement in the process, AIC did not object or move to strike. AIC claims that it did not need to object again during Oh's questioning, because it had previously objected and was overruled during voir dire. AIC claims that it was entitled to treat the ruling as the "law of the trial." But, during voir dire, AIC's hearsay objection was overruled as to

---

[7] The trial court did not rule that it would not be hearsay if Oh testified as to Lamb's appraisal. Similarly, the trial court did not authorize Sound Transit to ask Oh, "What did Lamb say the property was worth?" which would have elicited a response citing to an out-of-court statement. Based on the trial court's ruling and the question Sound Transit asked, Oh could have responded "yes" or "no," without ever mentioning the foundation of her belief and without alluding to Lamb's out-of-court appraisal.

Oh testifying about her belief of value of the property, not as to Lamb's appraisal or statements by Lamb. The issue has not been preserved.

AIC also argues that Oh's belief of the value of the property is inadmissible opinion testimony, because the valuation opinion of an owner is not admissible when it is based entirely on the hearsay of an expert's valuation. AIC cites to SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 331 P.3d 40 (2014), which relies on ER 701 for this assertion. ER 701 limits a lay witness's testimony to opinions and inferences based on the perception of the witness. In SentinelC3, dissenting shareholders wished to testify to establish their shares' values in order to withstand summary judgment. 181 Wn.2d at 136, 142. Relying on ER 701, the court found the shareholders' testimony inadmissible, because it was not based on firsthand knowledge or observation and the valuation report of the experts filed with the court was never authenticated. Id. at 142. Unlike in SentinelC3, Oh did not offer her opinion of what the property was worth to establish a fact necessary or favorable to her case. Rather, Oh's testimony verified that in July when she made a statement of value she believed the statement. It was a statement against her interest. The basis of that belief and the correctness of that belief were not sought by the questions asked. To the extent she volunteered testimony that may have been objectionable under ER 701, AIC did not object on that basis below. Any error is not preserved.

The trial court did not abuse its discretion in admitting Oh's testimony.

IV. Attorney Fees

AIC argues on appeal that the trial court erred when it denied its request for fees under RCW 8.25.070(1)(a) or RCW 8.25.075(1)(b). RCW 8.25.070 sets out the conditions for an award of attorney fees:

13

[I]f a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

(a) If condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

Sound Transit made a 30 day offer to AIC of $463,500 for both easements. AIC did not recover 10 percent more than Sound Transit's 30 day offer at trial, 509,850. At trial, AIC received a verdict of $225,000 for both easements. Therefore, under the plain language of the statute, AIC was ineligible to recover fees.

AIC nonetheless contends it is entitled to fees under RCW 8.25.070(1)(a), because Sound Transit failed to satisfy its obligations under the statute by not making a 30 day offer on the actual TCE at issue. AIC implies that Sound Transit deliberately exaggerated its taking at the commencement of the condemnation proceedings in order to later present the jury with a lesser taking and insulate itself from exposure to a fee award under RCW 8.25.070(1)(b). AIC interprets 8.25.070(1)(a) to require a 30 day offer on the exact easement at issue at trial.

Statutory interpretation is a legal question that this court reviews de novo. State v. Costich, 152 Wn.2d 463, 470, 98 P.3d 795 (2004). This court begins its analysis with the plain language employed by the legislature recalling that the primary goal is to give effect to the legislature's intent. Id. If the language is unambiguous, this court gives effect to that language. Id. The purpose of RCW 8.25.070 is to encourage settlement negotiations before trial and ensure that each side makes a good faith effort to settle.

14

Olympic Pipe Line Co. v. Thoeny, 124 Wn. App. 381, 399, 101 P.3d 430 (2004); Port of Seattle v. Rio, 16 Wn. App. 718, 720-21, 559 P.2d 18 (1977).

The TCE initially provided for a 3,883 square foot easement area. This area included a space Sound Transit's contractor would need only if the guideway column placement required a driveway relocation. AIC was concerned about the size of the TCE, because it would reduce available parking at the hotel. The TCE would eliminate about 25 parking spaces, and it was also going to make it difficult to use six more parking spaces abutting the building. The original TCE provided for a three year term of use.

On June 14, 2013, Sound Transit made a 30 day settlement offer for the value of the easements. On July 1, 2013, Sound Transit informed AIC that it would change the configuration of the TCE, because it no longer needed to relocate the driveway. Sound Transit provided AIC with an updated parcel map and updated right of way plan showing the change on that same day. This modification reduced the TCE area to 2,885 square feet—nearly a 1,000 square foot reduction. Sound Transit's initial offer remained open for more than two weeks after it provided AIC with the revised parcel map and right of way of plan. AIC did not oppose the reduced TCE square footage.

The TCE provided Sound Transit with exclusive occupancy of the TCE for the three year period, but allowed AIC to retain the right to use the TCE for all purposes except those inconsistent with Sound Transit's construction activities. Despite the language in the TCE, Sound Transit had communicated to AIC that its construction would only require sporadic use of the TCE area during the three year period.

AIC filed motions in limine prior to trial. In its motions, AIC requested the exclusion of any evidence that Sound Transit would use the TCE for a period of less time than was explicitly set forth in the easement. Sound Transit responded that it would try and change the language in the TCE to limit its exclusive right to use the TCE in order to make the language more consistent with its anticipated use. The trial court agreed with AIC that if Sound Transit had the right to exclusive use of the TCE area for the entire three year term, it could not attempt to show the jury that its actual duration of use would be less. The trial court granted AIC's motion, but specifically provided that its ruling did not preclude Sound Transit from submitting a revised TCE providing for the actual anticipated time of use of the TCE area.

With leave of the trial court, Sound Transit revised the TCE language regarding time of use and gave it to AIC, after jury selection, but before opening arguments. The revised language still provided for a three year easement term, but limited Sound Transit's exclusive use of the TCE area to a total of 160 nonconsecutive days during the term. The TCE also required 14 days' notice to AIC before each exclusive use period.

AIC filed a posttrial motion for fees and costs based on the argument that when Sound Transit changed the size of the TCE and the durational language of the TCE, it either nullified its 30 day offer or abandoned the condemnation proceeding altogether. The trial court denied AIC's motion.

The plain language of RCW 8.25.070(1)(a) says the condemnor must fail to make any written settlement offer in order for the condemnee to be entitled to fees. RCW 8.25.070(1)(a). The only statutory requirements are that the offer must be "in settlement,"

16

"written," and made at least 30 days prior to the beginning of trial. Id. Sound Transit satisfied these requirements.

Further, Sound Transit satisfied the purpose of RCW 8.25.070 when it made its 30 day offer. Sound Transit made an offer based on how much land its contractor believed it would need for the build at that time. By submitting its original 30 day offer, Sound Transit began settlement negotiations so the parties could attempt to work together and avoid trial.[8] The offer was more than twice the appraisal value from Sound Transit's appraiser. AIC was free to accept that offer. The evidence does not support that this number was not submitted in good faith.

Moreover, there is no evidence that the reason Sound Transit reduced the initial taking after making its initial 30 day offer was to avoid an attorney fee award. The TCE changes were made, in part, in response to complaints from AIC about the TCE's impact on parking. Sound Transit originally believed it would need the additional property for the TCE to accommodate a driveway relocation. But, the contractor was able to make changes later that enabled Sound Transit's work to have less of an impact on AIC's property. Sound Transit was consistently learning new information from its contractor about what it would require for the TCE in the time leading up to trial.

Further, prior to the hearings on the motions in limine, Sound Transit communicated to AIC that it would likely use the TCE for a shorter period of time than is set forth in the actual TCE. Consequently, AIC moved to exclude any evidence that

---

[8] Sound Transit's 30 day settlement offer remained open for two weeks after it provided AIC with the revised parcel map and right of way plan. While Sound Transit did not present the revised easement to AIC with a full 30 days before trial, the timing of Sound Transit's revision still afforded AIC the opportunity to carry out the intent of the statute—to negotiate with Sound Transit in an effort to avoid trial.

Sound Transit would use the TCE for less than the period designated in the easement. Despite the fact that Sound Transit was confident it would not need 160 day exclusive use of the TCE—the period designated in the revised easement—its appraiser valued the TCE for the full three year period. Because of its uncertainties about its construction needs, Sound Transit effectively agreed to pay for more exclusive use of the easement than it believed it was actually going to need during construction. There is no indication that the TCE changes were not made in good faith or were manipulated in order to prevent the fee statute from being triggered.

Moreover, after the size reduction, Sound Transit's appraiser valued the TCE at $61,503—the amount presented at trial. This resulted in roughly a $7,154 reduction in fair market value.[9] In order to satisfy RCW 8.25.070(1)(b), AIC needed to win a verdict of at least $509,850 at trial. The jury awarded AIC $163,497 for the permanent easement and $61,503 for the TCE. Even if Brackett's higher TCE appraisal had been presented to the jury and accepted, that $7,154 increase would not have taken the judgment anywhere near the offer, let alone 10 percent above it. Because the combined highest appraisals of the permanent easement and the TCE were substantially below Sound Transit's offer, AICs hope of recovery of attorney fees was solely dependent on recovery of sufficient severance damages. The trial court did not err when it did not award AIC attorney fees under RCW 8.25.070(1).

---

[9] AIC's appraiser valued the original TCE at $56,000. After the reduction, AIC's appraiser valued the TCE at $32,124—a $23,876 reduction. This comparatively larger reduction in value by AIC's appraiser accounts for both the reduction of square footage for the TCE and accounts for the elimination of an erroneous additional fourth year previously included in the calculation.

18

Alternatively, AIC argues that it is entitled to fees and costs under RCW 8.25.075(1)(b), because the change of the TCE constitutes an abandonment of the original taking. It contends that Sound Transit abandoned its taking by materially modifying the TCE during trial and put before the jury a different taking than the one for which it petitioned and obtained possession and use. AIC argues this is so, because the property Sound Transit is actually condemning is smaller and for a shorter amount of time than it was at the time of the 30 day offer. AIC cites to a 25 percent decrease in the area of the TCE and a reduction in duration of two and a half years.

RCW 8.25.075(1) provides:

> A superior court having jurisdiction of a proceeding instituted by a condemnor to acquire real property shall award the condemnee costs including reasonable attorney fees and reasonable expert fees if:
>
> . . . .
>
> (b) The proceeding is abandoned by the condemnor.

A plain language reading of this statute indicates that AIC's argument is without merit. The statute says that the court will award fees and costs if the comdemnor abandons the <u>proceeding</u>. Here, there is no indication that Sound Transit abandoned the condemnation proceeding. In fact, Sound Transit pursued the condemnation through to judgment.

Further, even if the statute were construed to allow for abandonment of the <u>original easement</u> instead of the proceeding, AIC has not provided support for its argument that abandonment is present in this case. AIC relies solely on authority from other

jurisdictions.[10] The case law that AIC relies on interprets abandonment to mean a change more significant than the changes made to the TCE here. All of the cases from other jurisdictions cited by AIC involve much more substantial substitutions of property rights or more substantial reductions in the amount of property taken.

Here, the permanent easement—the more substantial taking—did not change. The overall TCE location did not change, the nature of the TCE did not change, and the land area was reduced by about 25 percent. This resulted in a $7,154 reduction in Brackett's highest TCE appraisal. Further, the duration of the exclusive use language was simply clarified without changing either party's appraisals. AIC claims that the TCE duration was reduced by 2.5 years, but this mischaracterizes the changes Sound Transit made to the TCE. The revised TCE did reduce the amount of exclusive use to 160 days, but the duration of the easement was still for three years. The modification of the TCE was less significant here than the modifications that were found to be abandonments in the other jurisdictions. The trial court did not err in denying AIC's posttrial motion for attorney fees and costs under RCW 8.25.075(1)(b).

Additionally, AIC argues that it is entitled to attorney fees on appeal pursuant to RAP 18.1 if it prevails. A prevailing party may recover attorney fees only if provided by statute, agreement, or equitable principles. Tacoma Northpark, LLC v. NW, LLC, 123

---

[10] Dep't of Transp. v. N. Trust Co., 59 Ill. App. 3d 1053, 1054, 376 N.E.2d 286 (1978) (area taken reduced to one-sixth of area encompassed in original petition); County of Kern v. Galatas, 200 Cal. App. 2d 353, 354-55, 19 Cal. Rptr. 348 (1962) (original area taken reduced by 35 percent and the taking changed from oil, gas, hydrocarbon, and mineral interest to mere right of entry); Montgomery County v. McQuary, 26 Ohio Misc. 239, 240, 265 N.E.2d 812 (1971) (sewer route changed to take different course across different part of property); FKM P'ship, LTD v. Bd. of Regents of the Univ. of Houston Sys., 255 S.W. 3d 619, 624, 51 Tex. Sup. Ct. J. 989 (2008) (amount of property taken reduced by more than 97 percent).

Wn. App. 73, 84, 96 P.3d 454 (2004). As AIC is not the prevailing party, it is not entitled to attorney fees on appeal.

The trial court did not abuse its discretion in making the evidentiary rulings challenged by AIC. The trial court did not err when it denied AIC's motion for attorney fees and expenses. We affirm.

_Appelwick, J._

WE CONCUR: